Thomas L. BOWERS, Administrator of the Estate of Marguerite Anne Bowers, Deceased, Plaintiff,

v.

Robert A. DeVITO, M.D., et al., Defendants.

Nos. 80–1865, 80–2078.

United States Court of Appeals, Seventh Circuit.

Submitted June 21, 1982.

Decided Aug. 20, 1982.

As Amended Sept. 2, 1982.

Lester E. Munson, Smith & Munson, James G. Meyer, Chicago, Ill., for plaintiff.

Christine A. Bremer, Sp. Asst. Atty. Gen., Illinois Dept. of Mental Health, D. Kendall Griffith, Chicago, Ill., for defendants.

Before PELL, WOOD and POSNER, Circuit Judges.

POSNER, Circuit Judge.

We consider once again the extent to which the federal tort remedy in 42 U.S.C. § 1983 overlaps state tort remedies; for our most recent discussion of this question see *Johnson v. Miller*, 680 F.2d 39 (7th Cir. 1982).

The plaintiff in this case is the administrator of the estate of Marguerite Anne Bowers, who was murdered by Thomas Vanda in 1977. There are two groups of defendants, one consisting of public, the other of private, employees. The public group consists of officers and physicians of the Illinois Department of Mental Health and Developmental Disabilities and its Madden Mental Health Center. The private group consists of physicians at the Family Services and Mental Health Center of Oak Park and River Forest, which is under contract with the Department to provide treatment for patients released from its custody. Vanda is not a defendant.

In 1970 Vanda was convicted of aggravated battery with a knife. He was diagnosed at Madden as a "schizophrenic in remission" but must soon have been released because in 1971 he killed a young woman with a knife. This time he was found not guilty by reason of insanity and was committed to Madden. But he was released in April 1976 and a year later murdered Miss Bowers with a knife. The complaint alleges that the defendants knew that Vanda was dangerous when they released him, and acted recklessly in doing so.

The district court granted summary judgment for all defendants and ordered the complaint dismissed. With regard to the private defendants, the basis for the court's action was an affidavit of a qualified expert which states that they used all due professional care in their treatment of Vanda. The plaintiff's failure to offer any counter affidavit shows that there is no genuine issue of material fact regarding these defendants' due care. The plaintiff argues that this is immaterial, that his theory is not professional malpractice but deprivation of Miss Bowers' civil rights. But the defendants did not want to harm Miss Bowers; if they are at fault, it is only because they were careless—reckless even—in their care and treatment of Vanda. The expert's affidavit is evidence that they were not careless, and shifted to the plaintiff the burden of presenting some evidence that they were. See, e.g., *Faulkner v. Baldwin Piano & Organ Co.*, 561 F.2d 677, 683 (7th Cir. 1977). He presented none.

The district court based judgment for the public defendants on *Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980), where the Supreme Court held that the members of a parole board were not liable under section 1983 for damages caused when someone they had paroled, allegedly with reckless disregard for his dangerousness, murdered the plaintiff's decedent. The opinion in *Martinez* is narrowly written. The Court did "not decide that a parole officer could never be deemed to 'deprive' someone of life by action taken in connection with the release of a prisoner on parole," but did "hold that at least under the particular circumstances of this parole decision, appellants' decedent's

death is too remote a consequence of the parole officers' action to hold them responsible under the federal civil rights law." 444 U.S. at 285, 100 S.Ct. at 559. The circumstances to which the Court referred were the fact that the murder occurred five months after the parolee's release and that the parole board was unaware that the plaintiff's decedent faced any special danger from him. The interval here was even longer and there is again no indication that the defendants knew that the plaintiff's decedent was in any special danger. But the plaintiff argues that the standard in *Martinez* is not applicable to a mental health facility. Parole officials necessarily enjoy a broad discretion in deciding whether to release an inmate on parole. But the decision to release someone who is in custody because he is insane is presumably informed by a professional medical judgment that can be tested by objective standards. In other words there is a concept of medical, including psychiatric, malpractice that a court could apply in a section 1983 suit but there is no counterpart concept of a parole board's malpractice.

■ We need not decide whether this distinction is valid, for there is an alternative ground on which the dismissal of the complaint against these defendants must be upheld. Section 1983 imposes liability on anyone who under color of state law "subjects ... any citizen ... or other person ... to the deprivation of any rights, privileges, or immunities secured by the Constitution ...," and thus applies only if there is a deprivation of a constitutional right. See, e.g., *Paul v. Davis*, 424 U.S. 693, 699–701, 96 S.Ct. 1155, 1159–1160, 47 L.Ed.2d 405 (1976); *Baker v. McCollan*, 443 U.S. 137, 146–47, 99 S.Ct. 2689, 2695–96, 61 L.Ed.2d 433 (1979); *Bonner v. Coughlin*, 545 F.2d 565, 567, 569 (7th Cir. 1976). There is a constitutional right not to be murdered by a state officer, for the state violates the Fourteenth Amendment when its officer, acting under color of state law, deprives a person of life without due process of law. *Brazier v. Cherry*, 293 F.2d 401, 404–05 (5th Cir. 1961). But there is no constitutional right to be protected by the state against

being murdered by criminals or madmen. It is monstrous if the state fails to protect its residents against such predators but it does not violate the due process clause of the Fourteenth Amendment or, we suppose, any other provision of the Constitution. The Constitution is a charter of negative liberties; it tells the state to let people alone; it does not require the federal government or the state to provide services, even so elementary a service as maintaining law and order. Discrimination in providing protection against private violence could of course violate the equal protection clause of the Fourteenth Amendment. But that is not alleged here. All that is alleged is a failure to protect Miss Bowers and others like her from a dangerous madman, and as the State of Illinois has no federal constitutional duty to provide such protection its failure to do so is not actionable under section 1983.

■ We do not want to pretend that the line between action and inaction, between inflicting and failing to prevent the infliction of harm, is clearer than it is. If the state puts a man in a position of danger from private persons and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active tortfeasor as if it had thrown him into a snake pit. It is on this theory that state prison personnel are sometimes held liable under section 1983 for the violence of one prison inmate against another. See, e.g., *Spence v. Staras*, 507 F.2d 554, 557 (7th Cir. 1974). But the defendants in this case did not place Miss Bowers in a place or position of danger; they simply failed adequately to protect her, as a member of the public, from a dangerous man. That failure may be actionable under the common law of Illinois. The tendency in the common law has been to impose ever greater liability on officials who negligently fail to protect the public from dangerous criminals and lunatics. See, e.g., *Homere v. State*, 48 App. Div.2d 422, 370 N.Y.S.2d 246 (1975); *Leverett v. State*, 61 Ohio App.2d 35, 40–41, 399 N.E.2d 106, 109–10 (1978); *Williams v. United States*, 450 F.Supp. 1040, 1044–45

(D.S.D.1978); but see *Cady v. State*, 129 Ariz. 258, 630 P.2d 554 (App.1981). But the district court, having dismissed the plaintiff's federal claim before trial, quite properly declined to exercise jurisdiction over the plaintiff's pendent claim. See *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

We express no view on the plaintiff's rights under the tort law of Illinois. A state may if it wants recognize positive duties of care and make the breach of those duties tortious. But the only duties of care that may be enforced in suits under section 1983 are duties founded on the Constitution or laws of the United States; and the duty to protect the public from dangerous madmen is not among them.

The judgment of the district court dismissing the complaint is

AFFIRMED.

HARLINGTON WOOD, Jr., Circuit Judge, dissenting.

I respectfully dissent because I am concerned about this case sliding by us under Fed.R.App.P. 34 dispensing with oral argument after it was disposed of on motions in the district court. The problems are current and I believe deserve to be more fully developed factually and legally. After that I might adopt the majority view, but I am not confident of that position now.

To put it bluntly, a schizophrenic with a history of criminal violence was turned loose on the public after a short detention with the opportunity to do it again, and he took advantage of that opportunity.

It appears that Vanda in connection with a 1969 conviction had been diagnosed as a "borderline psychotic." In a 1970 conviction for a knife attack on a minor, he was diagnosed as a "schizoid personality." Then, after those forecasts of future trouble, Vanda was charged in 1971 with the knife murder of a minor. The schizophrenic diagnosis was again confirmed; and again confirmed in 1974. In 1975 he was found not guilty of that murder by reason of insanity and committed to the Illinois Department of Mental Health.

However, less than a year later he was certified as no longer dangerous to himself or others and discharged under an aftercare plan to the Family Service and Mental Health Center of Oak Park. Under that plan he lived elsewhere but showed up at the Center periodically for medication and counseling. Vanda, after about a year, while enjoying the freedom of that program, attacked and killed the plaintiff's decedent with a knife. Those familiar with Vanda surely could not have been totally surprised by his latest violence.

The plaintiff charges the state and private defendants, in their treatment and supervision of Vanda, with wilful, malicious, callous, and reckless indifference, and with disregard for decedent's safety and life, all in violation of the Fourteenth Amendment.

*Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980), which the majority notes, was narrowly written to apply to a parole release, nevertheless admittedly has a strong impact on this case. As noted by the majority, plaintiff argues that the *Martinez* parole standard should not apply to a person who has committed a murder, but after being found not guilty by reason of insanity, is committed to a mental health facility. Had Vanda not been found insane, the public could have rightfully expected him to have been found guilty and thereafter to have been protected from him for a substantial period of years. But, instead, having been found insane, Vanda was put back on the street in about a year, a potential public menace.

The standard applicable to Vanda for his release from a mental facility, whatever it is, I assume is one based on established professional criteria developed by medical science. It is not the same type of judgment made by a parole board based primarily on the inmate's past history and institutional behavior. I doubt if a schizophrenic, like Vanda, can be expected merely to "have learned his lesson," be habilitated, and thereafter be transformed into a law abiding citizen.

. In the depositions of some of the defendants, it is admitted that Vanda's condition

produced a pronounced potential for violence and that he was one of only a few patients from among thousands of others in custody with that same dangerous potential. There was also some agreement among defendants that a schizophrenic, like Vanda, cannot be cured and that a relapse into active schizophrenia could result in extreme violence. I believe these unique problems, not found in the ordinary parole situation, need the exploration of a trial.

*Martinez* must further be considered because in that case, even though only months intervened between parole release and murder, it was found to be too remote. Again, there is a distinction because in the present case the release of Vanda by the state defendants was conditioned upon continuing treatment for him by private defendants at the Center. There is obviously some close relationship between the state and private programs. Vanda was still a part of the program when he murdered his next victim. I would, therefore, not view his latest violence as a remote occurrence based on time alone.

*Martinez* also notes that the parole board was not aware that the next victim in that case was in any special danger as distinguished from the public at large. So far as I am aware, the defendants in the present case likewise had no reason to be aware of any special danger for the particular victim. Possibly the ordinary criminal on parole may in some circumstance exercise discretion over his choice of victims. If so, a parole board might, at times, have some warning that a particular inmate, motivated by revenge, for instance, might have designs on a particular victim. A schizophrenic, however, may not be able to exercise that same criminal discretion so that his choice of victims may be as large as the public itself. Knowledge of special danger to a particular person in parole cases may not be relevant in mental cases.

Then there is the brief affidavit of the recognized expert. Over a third of the affidavit lists his impressive distinctions, but on its merits, I find the remainder of the affidavit to be less than impressive. The expert's general conclusion is that the conduct of the private defendants was in accordance with applicable professional standards of medical and psychiatric care. That conclusion is based upon a review of the records and depositions. There is no suggestion that the expert interviewed the defendants or Vanda. The affidavit does not even identify the malady with which Vanda was afflicted, nor suggest what the proper treatment of it may be, what results can ordinarily be expected, or what the prevailing standard may be against which a fact-finder might have some basis to measure the particular conduct of the private defendants. I view the affidavit as little more than one doctor putting in a good word for another member of his profession. For some reason the plaintiff did not respond to the affidavit, in Judge Aspen's words, in a "meaningful manner." Even so, I do not believe the affidavit is sufficient to form an adequate basis for summary judgment in this situation.

This case for me is in a gray area, but on the basis of the present record and state of the law, I am not prepared to conclude that plaintiff cannot possibly be entitled to relief under any facts which might be proved in support of his allegations. I would give him the chance to try to make his case in court. Therefore, I respectfully dissent.