Constance P. FOX; Lisa M. Morris, by her next friend, Miriam J. Morris; Wendy F. Morris, by her next friend, Miriam J. Morris, Appellants,

v.

Roy S. CUSTIS; John R. Chandler, Jr., Appellees.

No. 82–1144.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 8, 1982.

Decided July 13, 1983.

Marc E. Bettius, Fairfax, Va. (Stephen K. Fox, Bettius, Rosenberger & Carter, P.C., Fairfax, Va., Robert A. Downs, Vienna, Va., on brief), for appellants.

Dennis G. Merrill, Asst. Atty. Gen., Richmond, Va. (Gerald L. Baliles, Atty. Gen., Richmond, Va., on brief), for appellees.

Before HALL and PHILLIPS, Circuit Judges, and EUGENE A. GORDON, Senior United States District Judge, sitting by designation.

JAMES DICKSON PHILLIPS, Circuit Judge:

Constance Fox, Wendy Morris and Lisa Morris (claimants) appeal the district court's dismissal of their several claims against Roy Custis and John Chandler (defendants), employees of Virginia's Department of Corrections, Division of Probation and Parole Services. Claimants charged that the negligent failure of the defendants to reincarcerate Morris Odell Mason, a dangerous parolee under their supervision, renders them responsible for Mason's subsequent criminal acts against claimants. In one count, each asserted a cause of action under Virginia tort law and in another, each premised liability on 42 U.S.C. § 1983. In dismissing both claims, the district court held that the defendants were absolutely immune under state law to liability on the state tort claims and that the § 1983 count failed to state a claim for which relief could be granted.

We hold that the district court properly dismissed the § 1983 claims and therefore affirm that portion of its judgment. But because we hold that the court should have exercised its discretion not to decide the pendent state claims, we vacate that part of the district court's order and remand with instructions to remand those claims to the state court.

I

The critical facts, construed most liberally to claimants from their complaint, are these. Roy S. Custis and his immediate supervisor, John R. Chandler, Jr., employees of Virginia's Department of Corrections, Division of Probation and Parole Services, were assigned to supervise Morris Odell Mason when he was paroled on April 12, 1978.

Mason had been convicted in 1976 of arson and grand larceny, and was sentenced to a term of twenty years, with ten years suspended, in the state penitentiary.

Chandler and Custis possessed sufficient information of Mason's propensities for arson, sexual aberrations and other criminal behavior to alert them of his dangerousness. Within three weeks of Mason's release, on May 1, he defrauded an innkeeper in violation of Virginia Code § 18.2–188. On May 8, Mason was convicted of this offense and given a 30-day suspended sentence. Chandler and Custis were aware of Mason's conviction, and considered it a violation of his terms of parole. In fact, Chandler on May 10 wrote to Mason, "You are in violation of ... parole.... For this violation your parole could be revoked and you would have to go back to prison .... Mr. Custis has recommended that you be continued on parole."

Custis and Chandler also suspected, through information provided to them by the county sheriff, that Mason had committed an act of arson on May 1 that resulted in one woman's death. The defendants nevertheless did not revoke Mason's parole, but left him free.

On May 14, Mason set fire to Fox's home, raped, beat and set on fire Lisa Morris, and shot and stabbed appellant Wendy Morris. Mason has since been convicted of the arson-murder of May 1, a murder committed on May 13, and the various crimes of May 14 against claimants.

Claimants filed separate damage actions against Custis and Chandler in the Circuit Court of Northampton County, Virginia. Their state tort claims alleged that Va.Code § 53–250(4) (since repealed) required appellees to reincarcerate Mason as soon as they became aware that Mason had violated the terms of his parole, and that the appellees' negligent, willful, wanton and reckless disregard of their duty to supervise Mason proximately and foreseeably resulted in injury to the appellants.

Their claims under 42 U.S.C. § 1983 alleged that the negligent actions of the parole officers, under color of state law, deprived appellants of constitutionally protected rights without due process of law.

The defendants removed each action from the Circuit Court of Northampton County to federal district court, pursuant to 28 U.S.C. § 1441, after which the three cases were consolidated. Defendants subsequently moved to dismiss the several complaints. The district court granted the motion and this appeal followed.

## II

The district court dismissed the § 1983 claim on the authority of *Martinez v. California,* 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980) (unanimous opinion). In *Martinez,* the Supreme Court held that the parents of a 15-year old girl, who was murdered by an unreasonably dangerous parolee five months after his release from prison, had no cognizable claim under 42 U.S.C. § 1983 against the parole officials who were responsible for his release. The *Martinez* Court conceded that the relevant officials "knew, or should have known, that the release of [the prisoner] created a clear and present danger that such an incident would occur." *Id.* at 280, 100 S.Ct. at 556. Nevertheless, the Court concluded that the parole officers "did not 'deprive' appellants' decedent of life within the meaning of the Fourteenth Amendment." *Id.* at 285, 100 S.Ct. at 559.

The § 1983 claim in *Martinez* was that parole board officials, "by their action in releasing [an inmate to parole], subjected [the § 1983 claimants'] decedent to a deprivation of her life without due process of law." *Id.* at 283, 100 S.Ct. at 558 (footnote omitted). The claim here is that the parole officers, by failing to revoke Mason's parole, subjected these § 1983 claimants to deprivations of liberty and property without due process of law. The basic similarity of claims and issues is obvious.

The claim in *Martinez* was found not cognizable under § 1983 because "under the particular circumstances of [that] parole decision, [the victim's] death [was] too remote a consequence of the parole officers' action"

to hold them responsible. *Id.* at 285, 100 S.Ct. at 559. Two factors were apparently critical in the Court's conclusion that effect was too remote from asserted cause to constitute a "deprivation" of constitutional right: the five months lapse of time between state action and loss of life, and the defendants' lack of awareness that the *Martinez* victim "as distinguished from the public at large, faced any special danger." *Id.*

If we take the *Martinez* analytical approach as the appropriate one for decision here, the claims in this case differ from the claims there in two arguably significant respects. The time interval between state conduct and victim injury was considerably shorter here; and the defendants here, unlike the *Martinez* defendants, had responsibility for the post-release supervision of the parolee.[1] In another respect obviously significant in the *Martinez* analysis the facts are similar: here too the defendants were unaware that the claimant-victims, as distinguished from the public at large, faced any special danger.

Predictably, claimants urge that the shorter time interval and the supervisory responsibility of these defendants distinguish this case from *Martinez* and compel the conclusion that the relationship between state action and victim injury here were not remote but so close as to constitute a "deprivation" of rights within the meaning of § 1983.[2] Equally predictably, the state urges that the critical factor here as in *Martinez* is the defendant-officers' lack of awareness of any special danger to the victim-claimants from the continued freedom of the parolee under their supervision.

If *Martinez* provided the sole analytical framework for reaching decision here, we would on an assessment of the factors deemed relevant there find the injuries here

also "too remote" from the challenged conduct of the state actors to constitute a "deprivation" of constitutional rights under § 1983. But the mix of factors here is concededly different and the cause and effect relationship concededly less attenuated than that in *Martinez.*

For that reason, another analytical approach—well established in § 1983 litigation—should and can be drawn upon to bolster the conclusion that no cognizable § 1983 claim is presented in this case. This approach concentrates primarily upon the exact nature of the constitutional rights protected by § 1983 rather than upon the remoteness of injury from state action that was the primary focus of the *Martinez* Court's analysis of § 1983's application in the same general factual pattern.

Threshold rights analysis under § 1983 begins with recognition that this section of the Civil Rights Act only protects against action under color of state law that "subjects ... any citizen ... or other person ... to the deprivation of any rights ... secured by the Constitution and laws" of the United States. *See Baker v. McCollan,* 443 U.S. 137, 146–47, 99 S.Ct. 2689, 2695–96, 61 L.Ed.2d 433 (1979). From this it follows that "[t]he first inquiry in any § 1983 suit ... is whether the plaintiff has been deprived of [such] a right," *id.* at 140, 99 S.Ct. at 2692, and this in turn involves "isolating the particular constitutional infringement complained of," *Martinez,* 444 U.S. at 284 n. 9, 100 S.Ct. at 559 n. 9.

Here the particular constitutional infringement complained of is the deprivation of liberty and property rights secured by the fourteenth amendment. In more specific factual terms, the claimants have asserted the right not to be injured in person

---

1. The *Martinez* Court specifically noted that the defendants in that case had no responsibility for post-release supervision of the parolee. *Martinez v. California,* 444 U.S. 277, 280 n. 2, 100 S.Ct. 553, 556 n. 2, 62 L.Ed.2d 481 (1980).

2. Claimants also contend that on the pleadings there was a disputable issue as to whether Mason was an "agent" of the state. We hold this to be a claim without merit both in fact

and in law. The Supreme Court's passing reference in *Martinez* to the possibility of comparable "agency" in that case was made in the course of summarily rejecting that theory as a basis of claim. *Id.* at 285, 100 S.Ct. at 559. The reference provides no support for the contention that the legal theory was being recognized by the Court as a possibly valid one depending upon the facts.

or property by the irresponsible failure of the state to protect them against any risks of harm posed to them by a state parolee under the direct supervision of the state's agents. In sum, the right asserted is the right to be protected by the state from the possible depredations of a convicted criminal with known dangerous propensities who is under the direct supervision of the state's agents.

■ With one qualification, we agree with the Seventh Circuit's recent holding that, in general, there simply is "no constitutional right to be protected by the state against . . . criminals or madmen," and that because, in corollary, there is no "constitutional duty [on the state] to provide such protection, its failure to do so is not actionable under section 1983." *Bowers v. DeVito,* 686 F.2d 616, 618 (7th Cir.1982). The qualification—an important one actually acknowledged by the *Bowers* court, *id.*—is that such a right and corollary duty *may* arise out of special custodial or other relationships created or assumed by the state in respect of particular persons. For example—as we have held in this circuit—such a right/duty relationship may arise under § 1983 with respect to inmates in the state's prisons or patients in its mental institutions whom the state knows to be under specific risk of harm from themselves or others in the state's custody or subject to its effective control. *Withers v. Levine,* 615 F.2d 158 (4th Cir.), *cert. denied,* 449 U.S. 849, 101 S.Ct. 136, 66 L.Ed.2d 59 (1980) (prison inmates under known risk of harm from homosexual assaults by other inmates); *Davis v. Zahradnick,* 600 F.2d 458 (4th Cir.1979) (inmate under observed attack by another inmate); *Woodhous v. Virginia,* 487 F.2d 889 (4th Cir.1973) (same as *Withers* ); *cf. Orpiano v. Johnson,* 632 F.2d 1096, 1101–03 (4th Cir.1980), *cert. denied,*

450 U.S. 929, 101 S.Ct. 1387, 67 L.Ed.2d 361 (1981) (no right where no pervasive risk of harm and specific risk unknown); *see also Spence v. Staras,* 507 F.2d 554 (7th Cir. 1974); *Gann v. Delaware State Hospital,* 543 F.Supp. 268, 272 (D.Del.1982); *Walker v. Rowe,* 535 F.Supp. 55 (N.D.Ill.1982) (duty of state to protect guards).

■ Without attempting a general definition of the special relationship required to give rise to a right, vindicable under § 1983, to affirmative protection by the state, it suffices to observe that none is claimed or appears here. The claimants here were simply members of the general public, living in the free society, and having no special custodial or other relationship with the state. As in *Martinez,* but unlike the situations in such cases as *Withers, Davis,* and *Woodhous* in this circuit, the state agent defendants here were "unaware that the [claimants] as distinguished from the public at large faced any special danger." [3] *Martinez,* 444 U.S. at 285, 100 S.Ct. at 559.

It was the claimants' tragic misfortune to be randomly victimized by the depredations of a criminal who was subject, but not subjected, to the effective control of the state. As Judge Posner observed in *Bowers,* "[i]t is monstrous if the state fails to protect its residents against such predators but it does not violate the due process clause of the Fourteenth Amendment . . . ," *Bowers,* 686 F.2d at 618. Whether such inaction by the state's agents may violate rights protected by state constitution or laws is, of course, another matter. *See Martinez,* 444 U.S. at 285, 100 S.Ct. at 559.

Because claimants had no federal constitutional right to be protected by the state from the acts of .Mason, we hold that their claim under § 1983 must fail.

---

**3.** That defendants' unawareness of the specific risk emerges as a critical factor under either a causation-focused or a right/duty analysis simply bespeaks the inescapably "tort-like" nature of the § 1983 claim. Although the Supreme Court has frequently admonished—most recently in *Martinez* itself, *id.* at 285, 100 S.Ct. at 559—that § 1983 claims are not properly analyzed under traditional ·common law tort principles, the parallelism in critical respects is inescapable. The question whether in negligence cases foreseeability relates more properly to defining duty or to assessing "legal cause" (or whether it makes any difference) is of course one of the most profound and persistent ones in the evolution of that body of common law tort doctrine. *See, e.g.,* Robert E. Keeton, *Legal Cause in the Law of Torts* 79–86 (1963).

### III

Claimants' state tort claims and their § 1983 claims arose from a "common nucleus of operative fact," *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966), and alleged a single wrong. *Cf. American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951). Therefore, these actions were properly removed to federal court under 28 U.S.C. § 1441(a).

The state court claims alleged that Va. Code § 53–250(4) imposed a ministerial duty upon the parole officers to reincarcerate Mason once they were aware that he had violated the terms of parole, and that the negligent failure to perform this non-discretionary duty proximately and foreseeably resulted in claimants' injuries. The pleadings also alleged that the officers' failure to reincarcerate Mason was in wanton and reckless disregard of appellants' safety, thereby taking the defendants outside the scope of their state employment and rendering them liable in tort to claimants. Under either of these theories, claimants contend, the defendants would not be shielded by absolute immunity as that principle has been developed by the Virginia courts.

The district court found that Custis and Chandler had not "acted outside the scope of their authority" or "improperly performed a ministerial function." *Cf. Semler v. Psychiatric Institute,* 538 F.2d 121, 127 (4th Cir.), *cert. denied,* 429 U.S. 827, 97 S.Ct. 83, 50 L.Ed.2d 90 (1976). It therefore granted the officers' motion to dismiss on grounds of absolute immunity.

In reaching this conclusion, the court was required to interpret Va.Code § 53–250(4) without definitive guidance from state court interpretive decisions. Its conclusion that absolute immunity existed was based upon a line of state court decisions culminating in *James v. Jane,* 221 Va. 43, 267 S.E.2d 108 (1980).

Without implying any criticism of the district court's analysis of the immunities defense, and reserving our own judgment on the matter, we observe that the state of state law on the subject was then and remains exceedingly difficult and unclear. As indicated, the Virginia courts had not had occasion to interpret the critical provisions of Va.Code § 53–250(4) as it bears upon this defense. Furthermore, it is fair to characterize the nature of the official immunities defense under state law as being in flux since the critical decision in *James v. Jane,* upon which the district court largely relied. *Compare Banks v. Sellers,* 224 Va. 168, 294 S.E.2d 862 (1982) (Thompson, J.) *with id.* at 174, 294 S.E.2d at 865 (Cochran, J., dissenting).

Under these circumstances we are of the opinion that once the § 1983 claim was dismissed on the merits, the appropriate course would have been for the district court, in an exercise of discretion, to remand[4] to the Virginia courts claimants'

---

**4.** We are aware that the propriety of remand to the state courts as opposed to dismissal without prejudice could be thought a matter not free from doubt. *Compare Hofbauer v. Northwestern Nat'l Bank,* 700 F.2d 1197 (8th Cir. 1983) *and Till v. Unifirst Fed. Savings and Loan,* 653 F.2d 152 (5th Cir.1981) *with Cook v. Weber,* 698 F.2d 907 (7th Cir.1983). Concededly, there is no direct statutory authority for remanding a pendent *claim* properly removed under 28 U.S.C. § 1441(a) paralleling the limited authority given in 28 U.S.C. § 1447(c) for remanding an entire "case" removed "improvidently and without jurisdiction" or the discretion given in 28 U.S.C. § 1441(c) to remand claims only removable because of their joinder with removable claims. But we think the mere fact that Congress has only seen fit specifically to speak to the matter of remand in these two circumstances does not compel the conclusion that it has forbidden remand to state courts of pendent state claims once a proper discretionary decision not to entertain them in federal court has been made. The alternative of dismissal without prejudice clearly exists, and of course is the only alternative in non-removed cases. Remand in removed cases comes to exactly the same thing so far as any discernible federal interest is concerned. And of course remand is more direct, less costly, and more protective in other ways to the plaintiff who originally chose the state forum. To insist that only dismissal without prejudice lies because of a lack of specific statutory authority for remand seems an unduly rigid reading of those statutes that do address the subject of remand directly.

pendent state claims. The questions presented, especially the scope of official immunity, are relatively novel, complex and of great local importance. In these circumstances, the district court should have followed, subject to the modification of remand, the counsel of *Gibbs* that

> [n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

383 U.S. at 726, 86 S.Ct. at 1139 (footnotes omitted). *See Financial General Bankshares, Inc. v. Metzger,* 680 F.2d 768, 772–78 (D.C.Cir.1982); *Rice v. President and Fellows,* 663 F.2d 336, 339 (1st Cir.1981), *cert. denied,* 456 U.S. 928, 102 S.Ct. 1976, 72 L.Ed.2d 444 (1982); *REA Express, Inc. v. Travelers Insurance Co.,* 554 F.2d 1200, 1201 (D.C.Cir.), *cert. denied,* 434 U.S. 858, 98 S.Ct. 182, 54 L.Ed.2d 131 (1977). After the appellants' § 1983 claim was resolved on the pleadings, the case was reduced to difficult and open questions of state law that were best resolved in the first instance by the Virginia courts.[5]

## IV

We affirm the district court's dismissal of claimants' § 1983 claims. We vacate that part of the judgment holding the state tort claims barred by absolute immunity and remand with instructions to remand those claims to the state court.

AFFIRMED IN PART; VACATED AND REMANDED IN PART.

5. Even though the federal claim was dismissed on the pleadings it did not so lack merit that it was "insubstantial" in a jurisdictional sense. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *see Hagans v. Lavine,* 415 U.S. 528, 537, 94 S.Ct. 1372, 1379, 39 L.Ed.2d 577 (1974). The district court had power, albeit improvidently exercised, to determine the whole. *See Gibbs,* 383 U.S. at 725, 86 S.Ct. at 1138; *Financial General Bankshares, Inc. v. Metzger,* 680 F.2d 768, 772 (D.C.Cir.1982); *Rice v. President and Fellows,* 663 F.2d 336 (1st Cir.1981), *cert. denied,* 456 U.S. 928, 102 S.Ct. 1976, 72 L.Ed.2d 444 (1982); *see also Ingram Corp. v. J. Ray McDermott & Co.,* 698 F.2d 1295, 1317–20 (5th Cir.1983). *Cf. Ancarrow v. City of Richmond,* 600 F.2d 443, 448 n. 5 (4th Cir.), *cert. denied,* 444 U.S. 992, 100 S.Ct. 523, 62 L.Ed.2d 421 (1979); *Sigmon v. Poe,* 564 F.2d 1093, 1096 (4th Cir.1977).

K.K. HALL, Circuit Judge, concurring in part and dissenting in part:

I concur in that portion of the majority's opinion which affirms the district court's dismissal of appellants' § 1983 claims. However, I cannot agree with the majority's conclusion that the district court erred in dismissing the appellants' pendent state claims. I, therefore, dissent from that portion of the majority opinion which vacates the decision of the district court and requires those claims to be remanded to the state court.

Unlike the majority, I am not persuaded that there are circumstances in this case requiring a remand of appellants' pendent state claims, which were properly removed under 28 U.S.C. § 1441(a). In my view, the retention of those claims was well within the district court's sound discretion. I believe that in ruling on them the district court did not exceed its discretion and correctly concluded that the defendant parole officers were immune from liability under Virginia tort law.

Following his parole from prison, where he had been confined because of his convictions for arson and grand larceny, Mason committed a misdemeanor by defrauding an innkeeper. The defendants made a conscious decision to permit Mason to remain on parole following his conviction for this offense. The misdemeanor was related neither to his prior convictions nor to the subsequent crimes which are the basis of the present action.

Appellants claim that Va.Code § 53–250(4) requires a parole officer to arrest any individual who has violated the terms of his

parole.[1] Significantly, however, this statute imposes no sanctions on a parole officer who makes a decision, as here, not to arrest a parole violator. In addition, appellants' argument totally ignores the fact that discretion is the very essence of a parole officer's duties. From hindsight, the decision not to arrest Mason was regrettably a mistake. But, at least on the facts of this case, it cannot be said that in making their decision the parole officers acted outside the scope of their authority. *See James v. Jane,* 221 Va. 43, 53, 267 S.E.2d 108, 113–114 (1980); *Gregoire v. Biddle,* 177 F.2d 579 (2d Cir.1949).

In my view, the district court correctly concluded that the provisions of Va.Code § 53–250(4), "in spite of the use of the word 'shall,' allows parole officers a certain degree of discretion regarding determinations that a parole violator should be arrested." I would, accordingly, affirm the order of the district court in its entirety, including that portion which dismisses appellants' pendent state claims.

1. The statute at issue reads in pertinent part as follows:

   § 53–250. **Functions, powers and duties of probation and parole officers.**
   —In addition to other functions, powers and duties prescribed by this article, each probation and parole officer shall . . .
   (4) Arrest, and recommit to the place of confinement from which he was released, or in which he would have been confined but for the suspension of his sentence or of its imposition, for violation of the terms of probation or parole, any probationer or parolee under his supervision, or as directed by the Chairman, Board member, or the court, pending a hearing by the Board or the court, as the case may be. . . .