Linda A. NELSON, et al., Plaintiffs,

v.

**MISSOURI OSTEOPATHIC
FOUNDATION, et al.,
Defendants.**

No. 85–4186–CV–C–5.

United States District Court,
W.D. Missouri, C.D.

Oct. 15, 1985.

Sheryl A. Feutz, Carson, Monaco, Coil, Riley & McMillin, Jefferson City, Mo., for plaintiff Nelson.

Bradley H. Lockenvitz, Jefferson City, Mo., for plaintiffs Philbert and Linda Moore.

Victor Tell Neff, Bushmann, Neff, Gallaher & Brown, Jefferson City, Mo., for plaintiff Moore.

P. Pierre Dominique, Jefferson City, Mo., for defendants Mo. Osteopathic Foundation, Cox, Barnes, Jaco, Stoll, and Medley.

Kelly Mescher, Asst. Atty. Gen., Jefferson City, Mo., for defendants Agniel, Balazic, Moore and Duncan.

## ORDER

SCOTT O. WRIGHT, Chief Judge.

Pending before the Court is a motion for summary judgment submitted by defendants Charles E. Still Hospital, Cox, Barnes, Jaco, Stoll, and Medley, a separate motion for summary judgment submitted by defendant Agniel, and a motion for judgment on the pleadings submitted by defendants Balazic, Moore, and Duncan. For the reasons set forth below, each of these motions will be sustained.

## I. *Background*

This case arises under 42 U.S.C. § 1983. In essence, plaintiffs contend that their constitutional rights were violated when the various defendants failed to prevent one Emmet Nave from kidnapping and sexually assaulting them.

At all relevant times, plaintiffs were employees of defendant Charles E. Still Hospital. Defendants Moore and Duncan were members of the Missouri Department of Probation and Parole. Defendants Balazic and Agniel were parole officers who allegedly were responsible for supervising Emmet Nave while he was on parole. Defendant Charles E. Still Hospital was, at all relevant times, engaged in the business of operating a hospital licensed by the State of Missouri. One of the programs at the hospital was an Alcohol and Drug Treatment Program in which various parolees, including Emmet Nave, were enrolled. Defendant Cox was the Administrator of the hospital. Defendant Barnes was the supervisor of the hospital's Alcohol and Drug Treatment Program. Defendant Jaco was Director of Nursing at the hospital. Defendant Stoll was Supervisor of Housekeeping at the hospital. Lastly, defendant Medley was, at all relevant times, Supervisor of Security at the hospital.

Although the hospital is a private entity and defendants Cox, Barnes, Jaco, Stoll, and Medley are private individuals, plaintiffs nevertheless have alleged that all of these defendants were acting "under color of state law" with respect to this case. In particular, plaintiffs have alleged that these defendants were acting "in concert" with members of the Missouri Department of Probation and Parole in the administration of the Alcohol and Drug Treatment Program at the hospital and conducted their activities in conformity with and pursuant to the policies, regulations, and decisions of the parole board.

As noted above, the gravamen of plaintiffs' complaint is that defendants are somehow responsible for the fact that they were kidnapped and sexually assaulted by Emmet Nave while Nave was enrolled in the Alcohol and Drug Treatment Program at the defendant hospital. According to the complaint, Nave was paroled from the Missouri State penitentiary on March 14, 1983, and was to be supervised by defendants Balazic and Agniel. One of the conditions of Nave's parole was that he refrain from the use of alcohol and illegal drugs. While he was on parole, Nave enrolled in the Alcohol and Drug Treatment Program at the defendant hospital. On November 17, 1983, Nave entered a plea of guilty to a charge of driving while intoxicated, but his parole was not revoked immediately. Two days later, on November 19, 1983, Nave came to the hospital, kidnapped plaintiffs at gunpoint, took them to a mobile home, and sexually assaulted them.

In Counts I, II, III, and VIII of their complaint, plaintiffs claim that defendants Balazic and Agniel are legally responsible for the injuries inflicted by Nave by reason of their failure to initiate parole revocation proceedings with respect to Nave on November 17, 1983. In Counts IV and V of their complaint, plaintiffs claim that defendants Moore and Duncan are liable to them for granting Nave parole and referring him to the Alcohol and Drug Treatment Program of the hospital without warning plaintiffs and other hospital employees of Nave's dangerous propensities. In Counts VI and VII, plaintiffs claim that defendants Cox, Barnes, and the hospital are legally responsible for plaintiffs' injuries by permitting Nave to enroll in the Alcohol and Drug Treatment Program without providing adequate security and protection to employees of the hospital.[1] Emmet Nave is not named as a defendant.

## II. *Parole Officials' Motion for Judgment on the Pleadings*

A motion for judgment on the pleadings has been submitted by defendants Moore,

---

**1.** According to paragraph 3 of the complaint, Counts IX through XIV are state law claims falling within the pendent jurisdiction of the Court. Defendants Jaco, Stoll, and Medley are named only in these pendent state law counts.

Duncan, and Balazic. This motion will be sustained for two fundamental reasons.

■ First, each of these defendants is entitled to absolute immunity. In *Evans v. Dillahunty*, 711 F.2d 828 (8th Cir.1983), the Eighth Circuit held that parole officials are entitled to absolute immunity with respect to their decisions to "grant, deny, or revoke parole." *Id.* at 831. Plaintiffs' claims against the members of the Parole Board are predicated on their decision to grant Emmet Nave parole. The claims against defendant Balazic are based on her failure to initiate parole revocation proceedings. Thus, under *Evans*, these defendants are not subject to suit for damages.[2]

Second, the claims against these defendants are defective because plaintiffs' allegations fail to state a cause of action. Under Fed.R.Civ.P. 12(c), the allegations in plaintiffs' complaint must be taken as true. Nevertheless, even taking plaintiffs' allegations as true, there is no basis for holding these defendants liable under § 1983. In order to state a claim under § 1983, the plaintiffs must allege two essential elements: (1) that the defendants caused a deprivation of the plaintiffs' federal rights; and (2) that the defendants acted under color of state law. *E.g., Mills v. Iowa State Penitentiary*, 774 F.2d 1172 (8th Cir.1985). With respect to defendants Moore, Duncan, and Balazic, there is no doubt but that their parole-related decisions were actions "under color of state law." However, the allegations in plaintiffs' complaint are insufficient to warrant a finding that these defendants "caused" any deprivation of plaintiffs' federal rights.

In *Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980), the Supreme Court affirmed the dismissal of a § 1983 lawsuit against parole officials for granting parole to a dangerous inmate who, five months after his release, tortured and killed the plaintiff's decedent. The complaint in the *Martinez* case alleged that the parole officials knew of the parolee's violent propensities and were aware of the likelihood that he would commit another violent crime after being paroled. *Id.* at 279, 100 S.Ct. at 556. The parole officials' actions were not merely characterized as negligent, "but also as reckless, willful, wanton and malicious." *Id.* at 280, 100 S.Ct. at 556. Nevertheless, the Supreme Court ruled that the plaintiff had not stated a cause of action under § 1983 because the allegations in the complaint did not amount to a "deprivation" of any constitutional right. *Id.* at 285, 100 S.Ct. at 559. The Court explained that

"[the parolee] was in no sense an agent of the parole board. Further, the parole board was not aware that appellant's decedent, as distinguished from the public at large, faced any special danger ... Although a § 1983 claim has been described as 'a species of tort liability' it is perfectly clear that not every injury in which a state official has played some part is actionable under that statute."

*Id.* (citations omitted).

■ In cases subsequent to *Martinez*, the federal courts have fashioned a general rule that, while the government has no general duty to protect the public from dangerous madmen, a duty to protect does arise when the government knowingly or recklessly puts a specific individual into a position of danger from private persons. *See, e.g., Estate of Bailey v. County of York*, 768 F.2d 503, 510–11 (3d Cir.1985) (welfare agency had duty to protect child from mother's boyfriend where agency returned the child to her mother's custody after finding that child had been abused by the boyfriend); *Jones v. Phyfer*, 761 F.2d 642, 647 (11th Cir.1985) (rape victim of inmate on Christmas furlough not entitled to special protection or warning even though she had been victim of earlier crime by inmate, inmate was released to the custody

---

**2.** *Compare Ray v. Pickett*, 734 F.2d 370, 373–74 (8th Cir.1984) (where probation officer allegedly falsified a report to parole commission, absolute immunity inapplicable because such conduct is neither quasi-judicial nor quasi-prosecutorial).

Here, the decision to grant parole is a quasi-judicial function while the decision not to initiate parole revocation proceedings is a quasi-prosecutorial function.

of his grandmother whose residence was in close proximity to victim's, and inmate had extensive history of criminal activity and psychiatric problems); *Davidson v. O'Lone,* 752 F.2d 817, 828 (3d Cir.1984), *cert. granted sub nom. Davidson v. Cannon,* —— U.S. ——, 105 S.Ct. 2673, 86 L.Ed.2d 692 (1985) (failure to protect prison inmate from other inmates actionable under § 1983 where prison official's conduct amounts to deliberate or reckless indifference to prisoner's safety); *Jensen v. Conrad,* 747 F.2d 185, 191–94 (4th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1754, 84 L.Ed.2d 818 (1985) (state and county agencies may have duty to intervene and protect battered children from their guardians); *Jackson v. Byrne,* 738 F.2d 1443, 1446 (7th Cir.1984), (striking firefighters not liable under § 1983 for fire-related deaths); *Fox v. Custis,* 712 F.2d 84, 85–88 (4th Cir.1983) (state corrections employees not liable under § 1983 for failing to revoke parole of dangerous prisoner who, within a month after parole, attacked plaintiffs); *Bowers v. DeVito,* 686 F.2d 616, 618 (7th Cir.1982) (public and private defendants not liable under § 1983 where parolee attacked plaintiff's decedent one year after release).

The rule that a duty to protect arises only if there is a "special relationship" between the victim and the government has its genesis in the *Martinez* case, where the Court reserved the question of whether a parole officer could ever "be deemed to 'deprive' someone of life by action taken in connection with the release of a prisoner on parole." 444 U.S. at 285, 100 S.Ct. at 559. In later cases, the courts expanded on the *Martinez* dictum by ruling that a constitutional right to protection by the state against third-party attacks *"may* arise out of special custodial or other relationships created or assumed by the state in respect of particular persons." *Fox v. Custis,* 712 F.2d at 88 (emphasis in original). As Judge

Posner explained, "[i]f the state puts a man in a position of danger from private persons and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active tortfeasor as if it had thrown him into a snake pit." *Bowers,* 686 F.2d at 618.

Consequently, in *Bailey* and *Jensen,* the courts indicated that there was a duty to intervene and protect specific children who had been physically abused in the past. *See also White v. Rochford,* 592 F.2d 381 (7th Cir.1979) (where police arrested driver of car, they had duty to protect three passenger children from roadside hazards). Similarly, in *Davidson,* the court recognized a duty on the part of state officials to protect a prison inmate under a known risk of attack by a fellow inmate. *See also Wade v. Haynes,* 663 F.2d 778 (8th Cir. 1981); *Withers v. Levine,* 615 F.2d 158 (4th Cir.1980). In sharp contrast, the cases have uniformly held that state parole officials are not liable to crime victims for injuries inflicted by parolees. Thus, it appears that the "snake pit" analogy allows a § 1983 plaintiff to recover for the nonfeasance of state officials where the plaintiff is in the custody of the state (as in the inmate cases) or is perceived as requiring special protection (as in the helpless child cases), but not where the plaintiff is a victim of a more or less random criminal attack by a paroled prisoner.[3]

 Turning to the instant case, this Court holds that plaintiffs' claims against the members of the parole board are analytically indistinguishable from the claims that were dismissed in *Martinez, Phyfer, Fox,* and *Bowers.* Emmet Nave had been released on parole some eight months before his attack on plaintiffs. *Compare Martinez,* 444 U.S. at 285, 100 S.Ct. at 559 (five months); *Phyfer,* 761 F.2d at 643 (less than one month); *Fox,* 712 F.2d at 85–86 (one month); *Bowers,* 686 F.2d at 617 (one

---

**3.** In cases where a dangerous parolee is released from prison, a more appropriate analogy is that it is like letting a viper out of its cage, knowing that it will strike someone but uncertain of its exact target. The Court finds this distinction

significant: in the "snake pit" cases, the targeted victim is readily ascertainable, while in the "viper on the loose" cases, the potential victims are far too numerous to be effectively protected.

year). Even accepting as true plaintiffs' allegation that these defendants "knew or should have known" that Emmet Nave presented "special dangers to plaintiffs and other employees of defendant hospital as opposed to the public at large," this Court holds that these defendants had no constitutional duty to warn or protect plaintiffs from Nave. *Compare Martinez,* 444 U.S. at 280, 100 S.Ct. at 556 (complaint alleged that parole officials knew that there was a "clear and present danger" that parolee would engage in future violent attacks); *Phyfer,* 761 F.2d at 643 (although plaintiff had been a recent crime victim of released inmate and lived in close proximity to inmate's residence during temporary furlough, corrections officials had no duty to warn plaintiff). The fact that these defendants may have been aware that Nave presented some "special danger" to employees of the hospital, as opposed to the general public, is not enough.[4] Instead, there must be some indication that the parolee had "singled out" the plaintiff as a person toward whom he was hostile. *See Holmes v. Wampler,* 546 F.Supp. 500, 506 (E.D.Va.1982); *see also Humann v. Wilson,* 696 F.2d 783 (10th Cir.1983). Otherwise, parole officials would be obligated to issue a warning and afford protection to every individual who might come into contact with a parolee. Nor does plaintiffs' characterization of defendants' conduct as a reckless and wanton "failure to revoke" Nave's parole distinguish the instant case from *Martinez. See Martinez,* 444 U.S. at

280 n. 2, 100 S.Ct. at 556 n. 2 (plaintiff had alleged that failure to revoke parole caused constitutional deprivation); *see also Fox,* 712 F.2d at 86 (parole officials had actual knowledge that parolee had broken conditions of parole but failed to commence revocation proceedings).

In short, there is no basis in the complaint for concluding that plaintiffs were "deprived" of any constitutional right by these defendants. Accordingly, the motion for judgment on the pleadings submitted by defendants Moore, Duncan, and Balazic must be sustained.

### III. *Agniel's Motion for Summary Judgment*

Defendant Agniel is the voluntary parole officer who allegedly violated plaintiffs' constitutional rights by failing to initiate parole revocation proceedings against Nave. His motion for summary judgment must be sustained for two reasons. First, he is entitled to absolute immunity. *See* pages 606–07 *supra.* Second, plaintiffs' claims against him fail to state a cause of action. As noted above, plaintiffs have failed to allege any deprivation of their constitutional rights. *See* pages 607–09 *supra.* Indeed, the plaintiffs' case against defendant Agniel is even weaker than the case against the other state defendants. In the affidavit accompanying his motion for summary judgment, Agniel states that, although he has worked as a voluntary parole officer from time to time, he was not assigned to work as Emmet

4. On the face of the complaint, it is apparent that the only reason Nave may have presented a "special danger" to plaintiffs was because he was enrolled in a drug and alcohol treatment program at plaintiffs' place of employment. This Court acknowledges that, in *Beck v. Kansas University of Psychiatry Foundation,* 580 F.Supp. 527 (D.Kan.1984), the court overruled a motion to dismiss where the complaint alleged that Kansas parole officials "knew or should have known" that a dangerous parolee "posed a special danger to those individuals who *might at any given time* be present at the University of Kansas Medical Center." *Id.* at 534 (emphasis added). Although the instant case is not factually distinguishable from *Beck,* this Court disagrees with the reasoning in *Beck* in two important respects. First, this Court believes that the

sort of "special danger" necessary to create a constitutional duty to warn or protect requires more than a threat to all individuals who "might at any given time" be present at a certain location; instead, there must be some reason to believe that the plaintiff has been singled out or targeted by the parolee.

Second, this Court finds troublesome the reasoning in the *Beck* opinion which turns a duty to protect under Kansas tort law into a constitutional duty to protect under § 1983. *See id.* at 534. In *Martinez,* the Supreme Court expressly stated the determination of whether there was a constitutional duty to protect is a matter to be decided without regard to whether such a duty existed as a matter of state tort law. *See Martinez,* 444 U.S. at 285, 100 S.Ct. at 559.

Nave's voluntary parole officer at any time and never supervised Nave in any manner while Nave was on parole. Plaintiffs have not submitted any evidence to contradict Agniel's affidavit. Accordingly, defendant Agniel's motion for summary judgment must be sustained. *See* Fed.R.Civ.P. 56(e).

### IV. *Private Defendants' Motion for Summary Judgment*

The "private defendants" in this case are the Charles E. Still Hospital, James Cox, Gordon Barnes, Carol Jaco, Betty Stoll, and Gordon Medley. These defendants have filed a joint motion for summary judgment. This motion will be sustained.

■ A plaintiff must allege two essential elements in order to state a claim under § 1983: (1) that the defendant caused a deprivation of the plaintiff's federal rights; and (2) that the defendant acted "under color of state law." *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980). Neither element exists here. As noted above, the defendants' failure to warn or protect plaintiffs did not constitute a deprivation of any of their federal rights.[5] In addition, these private defendants did not act "under color of state law."

■ In support of their argument that they did not act "under color of state law," the private defendants have submitted the affidavits of Dick Moore, James Cox, Dr. William H. Voss, and Ralph H. Voss. The affidavit of Moore, the chairman of the parole board, states that the board "exercises no control nor does it operate or act in a supervisory capacity over the hospital's alcohol and drug treatment program," and that a parolee "may be referred to the hospital for alcohol or drug abuse care but whether said person is accepted or rejected is governed solely by Charles E. Still Hospital and not by the Board of Probation and Parole." Similarly, the affidavit of Cox, the hospital administrator, indicates that state employees take no part in the hospital's alcohol and drug treatment program, that the hospital is not controlled in any manner by the State of Missouri, and that only seven of the 294 people treated in the hospital's alcohol and drug treatment program were referred to the program by a parole officer. The affidavit of Dr. Voss, a physician associated with the hospital's alcohol and drug treatment program, also indicates that the program is not controlled in any way by state officials. Finally, the affidavit of Ralph Voss, a state circuit judge, explains that individuals who are directed to obtain alcohol abuse treatment as a condition of probation are given an option of enrolling in the program of their choice and are responsible for paying for the costs of their chosen program.

In response, plaintiffs have submitted the affidavit of plaintiff Linda Nelson, which states that probation and parole officers "played a direct and controlling part in the hospital's counseling and medical treatment of alcohol and drug abuse patients who were on parole." In short, affiant Nelson indicated that the hospital cooperated with state probation and parole officers in administering the alcohol and drug abuse treatment program to probationers and parolees.

Assuming that every word in Nelson's affidavit is true, the Court still believes that the private defendants did not act "under color of state law" in failing to warn or protect plaintiffs. Even under the most expansive definition, an individual acts "un-

---

5. *See* pages 607–09, *supra.* With respect to the private defendants, plaintiffs' case is especially weak. Besides the fact that none of the defendants had a constitutional duty to protect plaintiffs, it bears emphasis that the breach of any such "duty" by the private defendants did not constitute "state action." Consequently, even if one or more of the private defendants had actual knowledge that Nave had specifically targeted plaintiffs, a failure to act still would not have resulted in a constitutional depriva-

tion. *See Blum v. Yaretsky*, 457 U.S. 991, 1002–12, 102 S.Ct. 2777, 2785–90, 73 L.Ed.2d 534 (1982) (despite extensive governmental regulation and funding, private nursing homes' decisions to transfer or discharge Medicaid patients were not "state action"; consequently, constitutional guarantee of procedural due process was not implicated); *Rendell-Baker v. Kohn*, 457 U.S. 830, 837–43, 102 S.Ct. 2764, 2769–72, 73 L.Ed.2d 418 (1982) (privately-owned but publicly-funded school was not a "state actor").

der color of state law" where he acts "with the knowledge of and pursuant to" state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935 n. 18, 102 S.Ct. 2744, 2752–53 n. 18, 73 L.Ed.2d 482 (1982). Here, there is no indication that the private defendants were acting "pursuant to" state law in designing or administering the hospital's security system. Nor is there any indication that the private defendants' failure to protect plaintiffs from Nave was a "joint activity with the State or its officers." *Id.* at 941, 102 S.Ct. at 2756.

The only hint of joint activity lies in the allegation that Nave was referred to the hospital and his treatment was supervised by parole officers. However, plaintiffs are not complaining of the hospital's acceptance of Nave into the program or its failure to properly treat Nave; the gravamen of their complaint is that security was inadequate to protect them from Nave. That failure simply cannot be characterized as conduct "under color of state law." *See Polk County v. Dodson*, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *see also Beck v. Kansas University Psychiatry Foundation*, 580 F.Supp. at 536; *see generally* note 5 *supra.* Consequently, the private defendants are entitled to summary judgment with respect to plaintiffs' § 1983 claims.

## V. *Conclusion*

In summary, the Court holds that plaintiffs do not have a federal case against any of the defendants named herein. Whether one characterizes the defect in plaintiffs' complaint as a lack of proximate cause, the absence of state action, or a failure to allege a deprivation of federal rights, the basic fact remains that none of the defendants can be held liable under § 1983 for Emmet Nave's attack on these plaintiffs. In the absence of a viable federal claim, plaintiffs' pendent state law claims must be dismissed as well. In so ruling, the Court expresses no opinion as to whether plaintiffs have a valid state law claim against any of the defendants. The Court deeply regrets the ordeal that plaintiffs were forced to endure at the hands of Nave; nevertheless, the plaintiffs may not assign liability for those injuries to these defendants under § 1983. Accordingly, it is hereby

ORDERED that the motion for judgment on the pleadings submitted by defendants Moore, Duncan, and Balazic is sustained. It is further

ORDERED that the motion for summary judgment submitted by defendant Agniel is sustained. It is further

ORDERED that the motion for summary judgment submitted by defendants Missouri Osteopathic Foundation d/b/a Charles E. Still Hospital, James Cox, Gordon Barnes, Carol Jaco, Betty Stoll, and Donald Medley is sustained. It is further

ORDERED that Counts I–VIII of plaintiffs' complaint are dismissed with prejudice. It is further

ORDERED that Counts IX–XIV of plaintiffs' complaint are dismissed, without prejudice, for lack of jurisdiction. It is further

ORDERED that each party shall bear its own costs.