Kimberly Ann CARLSON,
Plaintiff-Appellee,

v.

Raymond Henry CONKLIN, et
al., Defendants,

Perry Johnson, Defendant-Appellant.

No. 85–1745.

United States Court of Appeals,
Sixth Circuit.

Submitted Aug. 12, 1986.

Decided March 12, 1987.

Frank J. Kelley, Louis J. Porter, Corrections Div., Lansing, Mich., for defendant-appellant.

Mary A. Owens, Landman, Latimer, Clink & Robb, Muskegon, Mich., for plaintiff-appellee.

Before ENGEL, NELSON and RYAN, Circuit Judges.

RYAN, Circuit Judge.

Defendant Johnson was, at the time this lawsuit was filed, the Director of the Michigan Department of Corrections. He appeals the denial of his motion to dismiss plaintiff's civil rights action brought under 42 U.S.C. § 1983 (1981), arguing only that the trial court erred in denying his claim of qualified immunity. But, because we find that the plaintiff has failed to state a claim upon which relief may be granted, we reverse without reaching the qualified immunity issue.

## I.

Plaintiff Carlson's complaint alleged that on April 25, 1983, she was abducted, sexually assaulted, and robbed by defendant Conklin. Conklin had been convicted, in 1974, of armed robbery and assault with intent to commit armed robbery and, in 1976, of armed robbery. At the time of his assault upon the plaintiff, Conklin was serving a sentence for the 1976 armed robbery in a community corrections center, or "half-way house," in Muskegon, Michigan.

The complaint also alleged that defendant Johnson, as Director of the Department of Corrections, authorized the departmental policies pursuant to which Conklin had been placed in the half-way house; that Johnson knew that dangerous prisoners, such as Conklin, were regularly being placed in such half-way houses; that it was reasonably foreseeable that the placement of prisoners, such as Conklin, in half-way houses would lead to assaults on members of the surrounding communities; that Johnson owed a duty to plaintiff "as a member of the general public" to exercise reasonable care in determining the nature of Conklin's custody; and that such duty was violated when Johnson acted "with gross negligence and in wanton, reckless disregard of Plaintiff's federal constitutional rights" by allowing Conklin to freely traverse public streets where he could assault and injure members of the public, such as plaintiff. Plaintiff asserted that Johnson had deprived her of "numerous rights guaranteed to her by the Federal Constitution, among these rights being Plaintiff's 14th Amendment due process liberty interest, her federal right to bodily integrity, and her First Amendment right to freely traverse public walkways."

Defendant Johnson moved to dismiss the action under Fed.R.Civ.P. 12(b)(6), on the grounds that plaintiff failed to state a claim upon which relief may be granted and that defendant was entitled to qualified immunity under *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The district court denied the motion to dismiss. Johnson then filed this interlocutory appeal on the authority of *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

## II.

In *Harlow*, the Supreme Court held that: "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

457 U.S. at 818, 102 S.Ct. at 2738. *Mitchell* held that, because an entitlement to qualified immunity is "an *immunity from suit* rather than a mere defense to liability," 472 U.S. at 526, 105 S.Ct. at 2816, 86 L.Ed.2d at 425 (emphasis in original), "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 ... notwithstanding the absence of a final judgment." *Id.* at 530, 105 S.Ct. at 2817, 86 L.Ed.2d at 427. In light of the *Harlow* decision, this means that:

"Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."

*Id.* at 526, 105 S.Ct. at 2816, 86 L.Ed.2d at 425.

▮ Johnson's interlocutory appeal is properly before this court because his claim of qualified immunity was denied by the district court. We need not confine our

review, however, to the viability of the qualified immunity defense. *See Deckert v. Independence Shares Corp.*, 311 U.S. 282, 287, 61 S.Ct. 229, 232, 85 L.Ed. 189 (1940); *N.L.R.B. v. Interstate Dress Carriers, Inc.*, 610 F.2d 99, 104 (3d Cir.1979); C. Wright, *et al.*, *Federal Practice and Procedure*, § 3921 at 17–19 (1977). In *Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979), the Supreme Court observed that:

"§ 1983 imposes civil liability only upon one

'Who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities *secured by the Constitution and laws....*'

The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.' "

In reliance upon this principle, the Court in *Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980), determined that, because the plaintiff had not stated an actionable claim under § 1983, "it is not necessary for us to decide any question concerning the immunity of state parole officials as a matter of federal law." *Id.* at 284, 100 S.Ct. at 558. If the plaintiff here has failed to state a § 1983 claim, Johnson's qualified immunity defense becomes moot.

### III.

*Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980), was a § 1983 case against California officials responsible for paroling a dangerous sex offender, Thomas. Five months after his release on parole, Thomas tortured and killed a fifteen-year-old girl. The Court assumed,

"as the complaint alleges, that appellees knew, or should have known, that the release of Thomas created a clear and present danger that such an incident would occur. Their action is characterized not only as negligent, but also as reckless, wilful, wanton, and malicious." *Id.* at 280, 100 S.Ct. at 556. The Court determined, however, that the plaintiffs had failed to state a claim:

"Appellants contend that the decedent's right to life is protected by the Fourteenth Amendment to the Constitution. But the Fourteenth Amendment protected her only from deprivation by the '*State* ... of life ... without due process law.' Although the decision to release Thomas from prison was action by the State, the action of Thomas five months later cannot be fairly characterized as state action. Regardless of whether, as a matter of state tort law, the parole board could be said either to have had a 'duty' to avoid harm to his victim or to have proximately caused her death, see *Grimm v. Arizona Bd. of Pardons and Paroles*, 115 Ariz 260, 564 P2d 1227 (1977); *Palsgraf v. Long Island R. Co.*, 248 NY 339, 162 NE 99 (1928), we hold that, taking these particular allegations as true, appellees did not 'deprive' appellants' decedent of life within the meaning of the Fourteenth Amendment.

"Her life was taken by the parolee five months after his release. He was in no sense an agent of the parole board. Cf. *Scheuer v. Rhodes*, 416 US 232, 40 LEd2d 90, 94 SCt 1683, 71 Ohio Ops2d 474. Further, the parole board was not aware that appellants' decedent, as distinguished from the public at large, faced any special danger. We need not and do not decide that a parole officer could never be deemed to 'deprive' someone of life by action taken in connection with the release of a prisoner on parole. But we do hold that at least under the particular circumstances of this parole decision, appellants' decedent's death is too remote a consequence of the parole officers' action to hold them responsible under the federal civil rights law. Although a § 1983 claim has been described as 'a species of tort liability,' *Imbler v. Pachtman*, 424 US 409, 417, 47 LEd2d 128, 96 SCt 984 [988], it is perfect-

ly clear that not every injury in which a state official has played some part is actionable under that statute."

*Id.* at 284–85, 100 S.Ct. at 558–59 (footnotes omitted).

*Martinez* has been relied upon repeatedly to deny relief under § 1983 where plaintiffs were harmed by criminals formerly, or never, in the custody of state officials. *See, e.g., Jones v. Phyfer,* 761 F.2d 642 (11th Cir.1985); *Wright v. City of Ozark,* 715 F.2d 1513 (11th Cir.1983); *Fox v. Custis,* 712 F.2d 84 (4th Cir.1983). In the words of Judge Posner, "[T]here is no constitutional right to be protected by the state against being murdered by criminals or madmen." *Bowers v. DeVito,* 686 F.2d 616, 618 (7th Cir.1982).

This court has approved the reasoning of these cases in *Janan v. Trammell,* 785 F.2d 557, 560 (6th Cir.1986), in which we upheld the dismissal of a § 1983 claim against state officials alleged to have been grossly negligent in paroling the murderer of plaintiffs' decedent:

"[T]he proper analysis of whether a special relationship exists between the criminal and the victim or between the victim and the state or whether there is some showing that the victim, as distinguished from the public at large, faces a special danger by the parolee's release. In so holding, we follow other circuits that have held that absent a special relationship between the criminal and the victim or the victim and the state, no due process violation can occur."

## IV.

█ Under the *Martinez* analysis, Conklin's assault upon plaintiff is "too remote a consequence of [Johnson's actions] to hold [him] responsible under the federal civil rights law." 444 U.S. at 285, 100 S.Ct. at 559. On a Rule 12(b)(6) motion to dismiss, the allegations of plaintiff's complaint "are taken as true," *Walker Process Equipment, Inc. v. Food Machinery and Chemical Corp.,* 382 U.S. 172, 175, 86 S.Ct. 347, 349, 15 L.Ed.2d 247 (1965), but the plaintiff here has pleaded no set of facts in support of her claim which would entitle her to

relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

The fact that Conklin had been placed in a half-way house rather than paroled does not distinguish this case from *Martinez.* While one purpose of incarceration is to protect the public, the various, sometimes conflicting, responsibilities state law places upon the Department of Corrections do not create any responsibility under the Federal Constitution to protect the public from convicted criminals. Because the State of Michigan has no "constitutional duty to provide such protection its failure to do so is not actionable under section 1983." *Bowers v. DeVito,* 686 F.2d 616, 618 (7th Cir.1982). In *Humann v. Wilson,* 696 F.2d 783 (10th Cir.1983), the Tenth Circuit held that the actions of a parole board in placing an inmate in a half-way house were too remote from a crime committed by the inmate while living in the half-way house to state a claim under § 1983. The same result is indicated here.

Nor do we consider plaintiff's allegation of other constitutional violations, other than due process violations, to distinguish this case from *Martinez.* The complaint fails to allege that *Johnson* deprived plaintiff of *any* constitutional rights. In *Hayes v. Vessey,* 777 F.2d 1149 (6th Cir.1985), this court applied *Martinez* in a § 1983 action alleging deprivation of equal protection. We do not consider the *Martinez* holding to extend only to cases alleging due process violations.

We conclude that the district court erred in failing to dismiss plaintiff's § 1983 suit for failure to state a claim upon which relief may be granted.

## V.

We REVERSE AND REMAND to the district court with instructions to dismiss the complaint against defendant Johnson.