48 F.3d 1220
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Thomas A. WARMUS, an individual; American Way Service
Corporation, a Michigan corporation; American Way Life
Insurance Company, a domestic insurance company; American
Way Casualty Company, a domestic insurance company,
Plaintiffs-Appellees,
v.
Leon E. HANK, a classified employee in the service of the
executive branch of government (93-1619) Dhiraj N.
Shah, Acting Commissioner of Insurance
(93-1620) Defendants-Appellants.
 Nos. 93-1619, 93-1620.
 United States Court of Appeals, Sixth Circuit.
 Feb. 28, 1995.
 
 Before: KEITH, JONES, and MILBURN, Circuit Judges.
 MILBURN, Circuit Judge.
 
 
 1
 Defendants Leon E. Hank and Dhiraj N. Shah appeal, on the grounds of qualified immunity, the district court's denial of their motions to dismiss plaintiffs' third amended complaint alleging violations of their constitutional rights under 42 U.S.C. Sec. 1983. On appeal, the issues are (1) whether plaintiffs' complaint includes sufficient facts to support a claim under 42 U.S.C. Sec. 1983 that defendants' actions were intended as retaliation against plaintiffs for the exercise of their First Amendment rights of free speech and access to the courts, (2) whether this court should adopt a heightened pleading requirement for claims against government officials that involve an element of intent or motive, (3) whether a state official's institution of legal proceedings may serve as the basis for liability under 42 U.S.C. Sec. 1983 in the absence of evidence that the official's action was egregious or a "sham," and (4) whether plaintiffs' complaint stated sufficient factual allegations to overcome defendants' qualified immunity defense. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 Plaintiffs American Way Life Insurance Company and American Way Casualty Company are wholly-owned subsidiaries of plaintiff American Way Service Corporation. All three businesses have their principal place of business in Southfield, Michigan. Plaintiff Thomas A. Warmus, a citizen of Florida, is the principal shareholder and beneficial owner of all three companies.
 
 
 3
 According to plaintiffs, prior to December 1988, plaintiffs "had successfully engaged in administrative and other litigation with the Michigan Department of Insurance and the Michigan Insurance Commissioner." J.A. 279. Plaintiffs also allege that prior to December 1988, they exercised their First Amendment right of free speech "by openly criticizing through their litigation and by other means the action of the Michigan Department of Insurance and the Michigan Insurance Commissioner." J.A. 279.
 
 
 4
 In December 1988, the Michigan Insurance Bureau ("MIB"), through the state attorney general, filed an action in the Ingham County Circuit Court requesting an order for conservatorship for American Way Life Insurance Company and American Way Casualty Company, alleging that both companies were insolvent. Plaintiffs assert that defendant Leon E. Hank, who was at the time of the action the director of the financial analysis and examinations division of the MIB, and defendant Dhiraj N. Shah, who was then serving as the acting commissioner of insurance for the State of Michigan, acted jointly to have the conservatorship action commenced against plaintiffs. After an evidentiary hearing on December 3, 1988, the court denied the petition for a conservatorship. However, the court did appoint an independent auditor. Peat Marwick & Main, to determine the accounting procedures necessary for plaintiffs to comply with the state insurance code and ordered plaintiffs to implement the recommendations of the auditor and to provide the auditing staff full access to all records and personnel. Plaintiffs assert that defendants knew, or should have known, at the time the action was initiated that their allegations that plaintiff companies were insolvent were untrue and that the petition was filed in retaliation for plaintiffs' exercise of their First Amendment rights.
 
 
 5
 Between January 19, 1989, and May 18, 1989, defendants allegedly forwarded to insurance officials in other states in which plaintiff companies were then doing business draft audit reports containing misleading financial information as well as letters giving notice that a petition for conservatorship had been filed in Michigan but omitting the fact that the petition had already been denied. Plaintiffs allege that as a result of the mailings, regulatory proceedings against plaintiff companies have been initiated in Illinois, Missouri, Wisconsin, Tennessee, Alabama, Florida, Mississippi, Nebraska, Ohio and Texas.
 
 B.
 
 6
 On October 17, 1990, plaintiffs filed an action against defendants Hank and Shah, and Raymond W. Hood, Sr., then the director of the Michigan Bureau of Licensing and Regulation, in the Circuit Court of Ingham County, Michigan. In the action, plaintiffs sought an injunction prohibiting defendant Hank or any other employee of the MIB from communicating any information regarding plaintiff companies to any person outside the MIB. Plaintiffs also asked the court to disqualify defendant Hank from performing any additional audits of plaintiff companies. Plaintiffs alleged that either defendant Shah or defendant Hood was responsible for supervising defendant Hank and that the person properly considered Hank's supervisor had neglected his responsibility. Defendant Hood was later released from the action by stipulation of the parties. After a show cause hearing on December 7, 1990, plaintiffs' requests for injunctive and declaratory relief were denied.
 
 
 7
 Plaintiffs filed a first amended complaint on January 31, 1992, seeking damages for violations of plaintiffs' rights under both the Constitution of the United States and the Michigan state constitution. After the amended complaint was filed, the case was removed to district court, on February 5, 1992. In the amended pleading, plaintiffs alleged that defendant Hank: (1) prepared draft audit reports of plaintiff companies that contained misleading facts regarding the financial condition of the companies, (2) sought a conservatorship for plaintiff companies with knowledge that the companies were in sound financial condition, (3) failed to file similar conservatorship actions against other companies he knew to be dangerously underfinanced or insolvent, and (4) disseminated to officials in other states his draft audit reports, along with a letter stating that a petition for conservatorship had been filed in Michigan but omitting to inform the recipients that the petition had been denied by a state court. Plaintiffs alleged that defendant Shah had abrogated his responsibilities by failing to properly supervise defendant Hank and had become a co-conspirator in the deprivation of plaintiffs' rights by knowingly allowing defendant Hank to proceed with his retaliatory conduct toward plaintiff companies. Plaintiffs asserted that these actions deprived them of procedural and substantive due process, equal protection of the laws and just and fair treatment.
 
 
 8
 The amended complaint contained scant details. Plaintiffs listed no dates in the complaint and failed to identify by name the insurance officials in other states to whom defendants allegedly sent the misleading mailings. Plaintiffs also failed to state whether their claims were brought under 42 U.S.C. Sec. 1983 or whether their claims were being pursued against defendants Hank and Shah individually or in their official capacities.
 
 
 9
 Defendant Shah filed a motion to dismiss on February 29, 1992, alleging that plaintiffs' complaint failed to state a valid claim of constitutional violation, or alternatively, that the complaint failed to state sufficient facts to overcome defendants' claim of qualified immunity. Defendant Hank subsequently filed a motion to dismiss on March 11, 1992. For purposes of the motions to dismiss, defendants assumed that plaintiffs were proceeding under 42 U.S.C. Sec. 1983 and that defendants were being sued as individuals.
 
 
 10
 On March 25, 1992, a magistrate judge heard oral argument on a motion by defendant Hank for a protective order and a similar motion by defendant Shah seeking a protective order staying discovery. At the conclusion of the hearing, the judge held all discovery in abeyance pending resolution of the motions to dismiss. The magistrate judge also ordered plaintiffs to file a brief in opposition to defendants' motions to dismiss. The brief in response filed by plaintiffs made numerous references to the wrongs visited on plaintiffs by the State of Michigan. In response to plaintiffs' brief, defendant Shah filed a supplemental motion to dismiss on the grounds that plaintiffs were suing him in his official capacity and that the claim for damages was barred by the Eleventh Amendment. At the same time, plaintiffs filed a second amended complaint, which was rejected by the court on April 10, 1992, for failure to seek leave to amend.
 
 
 11
 The district court heard defendants' motions to dismiss the first amended complaint on May 20, 1992. The court discussed the insufficiency of the complaint's factual allegations with plaintiffs' counsel and, despite objections by counsel for both defendants, allowed plaintiffs an opportunity to amend their complaint. The third amended complaint was filed on June 3, 1992. In this complaint, plaintiffs pursued a new theory of relief based on the factual allegations they had previously set forth, this time explicitly seeking relief under 42 U.S.C. Sec. 1983. Plaintiffs argued that defendants Hank and Shah acted "jointly and in concert" in an effort to retaliate against them for the exercise of their First Amendment rights to free speech and access to the courts and with the purpose of depriving them of procedural due process. The complaint failed to put forth any new facts to support plaintiffs' allegations and abandoned their prior claims for violations of substantive due process and equal protection as well as two pendent state claims.
 
 
 12
 Defendant Shah filed a supplemental motion to dismiss and a motion for sanctions on June 19, 1992. On March 31, 1993, the district court judge issued a memorandum opinion and order granting the motions to dismiss in part and denying the motions in part, and denying defendant Shah's motion for sanctions. The district court held that plaintiffs' procedural due process claim was barred by defendants' qualified immunity but refused to find plaintiffs' claims of retaliation for the exercise of their First Amendment rights to free speech and access to the courts barred on similar grounds. In its opinion, the district court noted that the third amended complaint did little to cure the pleading deficiencies of the earlier complaint but found that the addition of the First Amendment claims enabled plaintiffs to state claims that avoided defendants' qualified immunity defense. J.A. 108-09. A timely appeal by both defendants followed.
 
 II.
 A.
 
 13
 Defendants argue that plaintiffs' third amended complaint fails to plead sufficient factual allegations to establish a constitutional claim under 42 U.S.C. Sec. 1983. Defendants' appeal comes to us as an interlocutory appeal of the district court's denial of qualified immunity; ordinarily, we are confined in such appeals to the issue of qualified immunity alone. Rich v. City of Mayfield Heights, 955 F.2d 1092, 1094 (6th Cir.1992). However, if a plaintiff has failed to state an actionable claim, the issue of qualified immunity becomes moot. Therefore, before examining the district court's denial of qualified immunity, it is necessary for us to determine if plaintiffs' complaint contains sufficient factual allegations to state a constitutional claim. Carlson v. Conklin, 813 F.2d 769, 770-71 (6th Cir.1987) (expanding the court's scope of review beyond qualified immunity to determine if the plaintiff had stated a claim for which relief could be granted in an interlocutory appeal on qualified immunity grounds).
 
 
 14
 Plaintiffs have brought their claims under 42 U.S.C. Sec. 1983, which imposes liability on anyone
 
 
 15
 who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws....
 
 
 16
 42 U.S.C. Sec. 1983. "The first inquiry in any Sec. 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.' " Baker v. McCollan, 443 U.S. 137, 140 (1979). If the plaintiff fails to state an actionable claim under Sec. 1983, "it is not necessary for us to decide any question concerning the immunity of [defendants] as a matter of federal law...." Martinez v. State of California, 444 U.S. 277, 284 (1980). Thus, if plaintiffs in this case have failed to state a claim, defendants' qualified immunity defense becomes moot. See Carlson, 813 F.2d at 771.
 
 
 17
 On a Federal Rules of Civil Procedure ("Fed.R.Civ.P.") 12(b)(6) motion to dismiss, the allegations contained in the plaintiff's complaint are accepted as true. Walker Process Equip., Inc. v. Food Mach. and Chem. Corp., 382 U.S. 172, 174-75 (1965); Carlson, 813 F.2d at 772. " '[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " Cameron v. Seitz, 1994 WL 575446, * 5 (6th Cir.1994) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In considering a motion under Fed.R.Civ.P. 12(b)(6), it is not the function of the court to weigh evidence or evaluate the credibility of witnesses, Cameron, 1994 WL 575446, * 5; instead, the court "must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." Allard v. Weitzman (In re DeLorean Motor Co.), 991 F.2d 1236, 1240 (6th Cir.1993). A district court may not grant dismissal under Fed.R.Civ.P. 12(b)(6) merely because it does not believe the factual allegations of the complaint. Allard, 991 F.2d at 1240.
 
 
 18
 This standard of review, while liberal, does require that plaintiffs put forth more than the bare assertion of legal conclusions. "In practice, 'a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.' " Allard, 991 F.2d at 1240 (quoting Scheid v. Fanny Farmer Candy Shops, 859 F.2d 434, 436 (6th Cir.1988)); see Gutierrez v. Lynch, 826 F.2d 1534, 1538-39 (6th Cir.1987) (noting that vague and conclusory assertions of conspiracy are insufficient to state a claim). However, a court is required to construe a civil rights complaint liberally. Jones v. Duncan, 840 F.2d 359, 361 (6th Cir.1988).
 
 
 19
 To state a viable claim under 42 U.S.C. Sec. 1983, a plaintiff must allege that he or she was deprived of a right secured by the Constitution or by a federal law and that the deprivation was caused by a person acting under color of state law. Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 155-57 (1978). As a general rule, a plaintiff must also allege that the deprivation of his rights was intentional or the result of gross negligence. Davidson v. Cannon, 474 U.S. 344, 347-48 (1986); Nishiyama v. Dickson County, Tenn., 814 F.2d 277, 282 (6th Cir.1987) (en banc) (requiring that gross negligence evidence outrageous conduct or arbitrary use of government power). Moreover, pursuant to Dominque v. Telb, 831 F.2d 673 (6th Cir.1987), when the issue of qualified immunity is raised, a plaintiff has the burden of "plead[ing] facts which, if true, describe a violation of a clearly established statutory or constitutional right of which a reasonable public official, under an objective standard, would have known." Id. at 676 (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).
 
 
 20
 Defendants do not attempt to deny the presence of state action. Because both defendants acted as state officials regarding insurance matters, and plaintiffs' complaint relates to an insurance-related dispute, the element of state action is clear. Furthermore, defendants do not argue that plaintiffs lack the right to be free of retaliation for the exercise of their First Amendment rights. Defendants argue instead that because the Michigan insurance code in effect at the time of the events that gave rise to this action granted the commissioner of insurance discretion to disseminate draft audit reports and other materials pertinent to the state's investigation of insurance companies operating within Michigan, Mich.Comp.Laws Sec. 500.222(4), defendants acted within the law and plaintiffs have failed to state a claim.
 
 
 21
 Defendants overlook the fact that plaintiffs have complained about more than the mere distribution of the draft audit reports by defendants. Plaintiffs have alleged that defendants distributed along with those reports letters that informed insurance regulators in other states about the conservatorship proceeding against plaintiffs and misrepresented that the proceeding was still underway. Plaintiffs also allege that the conservatorship proceeding itself was undertaken in retaliation for their exercise of First Amendment rights. This is significantly more action than is authorized by the Michigan statute. Moreover, even when a state actor is authorized to take some action, he may be subject to liability if he takes that action with improper motive or intent. Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 283-84 (1977). " '[I]t is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under [42 U.S.C.] Section 1983 even if the act, when taken for a different reason, would have been proper.' " Smith v. Maschner, 899 F.2d 940, 948 (10th Cir.1990) (quoting Buise v. Hudkins, 584 F.2d 223, 229 (7th Cir.1978), cert. denied, 440 U.S. 916 (1979)). Thus, the fact that Michigan law authorized insurance officials to distribute draft audit reports to officials in other jurisdictions does not insulate defendants from liability if such actions were taken with an intent to retaliate against plaintiffs for the exercise of their First Amendment rights.
 
 
 22
 Defendants further challenge the sufficiency of plaintiffs' complaint by arguing that it fails to allege enough facts to allow the court to determine if plaintiffs' speech related to matters of public concern as required under Connick v. Myers, 461 U.S. 138, 149 (1983). In Connick, the Supreme Court held that when a government employee claims he was discharged in retaliation for his exercise of free speech, his speech must have related to a matter of public concern. Connick, 461 U.S. at 149.
 
 
 23
 The district court found that plaintiffs had alleged "in barely sufficient manner, the violation of a clearly established constitutional right, actionable under 42 U.S.C. Sec. 1983." J.A. 108. The district court was troubled by the sparse factual allegations in the complaint but held that
 
 
 24
 [s]till, as the Court scrutinizes the complaint under Fed.R.Civ.P. 12(b)[ (6) ], it must construe the allegations liberally and grant plaintiffs the benefit of all reasonable inferences that may be drawn from the allegations.... Accordingly, the Court presumes for present purposes that plaintiffs' public criticism pertained to matters of public concern....
 
 
 25
 J.A. 108 n. 1 (citations omitted). Defendants object to the district court's presumption and argue that plaintiffs were required to plead all of the factual allegations necessary to sustain a finding that plaintiffs' criticisms related to matters of public concern. Defendants assert that plaintiffs' complaint should have enumerated the instances of public criticism that allegedly sparked defendants' retaliatory actions. According to defendants, the district court is required to determine from the complaint, not presume, whether this speech primarily involved matters of public concern. However, Connick is not applicable to the facts in this case. The Court in Connick specified that its holding was "only that when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest...." the federal courts were not the appropriate forum for review. Connick, 461 U.S. at 147. The Court further noted that its decision was motivated by its responsibility "to ensure that citizens are not deprived of fundamental rights by virtue of working for the government." Connick, 461 U.S. at 147. In this case, plaintiffs are not government employees speaking out about internal personnel matters; they are regulated companies, and the beneficial owner of those companies, criticizing the conduct of government.
 
 
 26
 Plaintiffs are not required to specifically aver in their complaint that the instances of public criticism that created defendants' retaliatory motive concerned matters of public concern. Monks v. Marlinga, 923 F.2d 423, 425 (6th Cir.1991) (per curiam) (concluding that Connick does not mandate such a pleading requirement). Furthermore, we conclude that even if plaintiffs must prove that their public criticism related to matters of public concern, it is not unreasonable for the court to draw such an inference from the allegations contained in the complaint. Defendants both worked in important positions within state government; any criticism by plaintiffs in relation to defendants' job performance relates to the functioning of government, a matter of utmost public concern. New York Times Co. v. Sullivan, 376 U.S. 254, 269-70 (1964). It is not yet necessary for the court to make a conclusive determination that plaintiffs' statements related to matters of public concern. At this stage of the proceedings, we can indulge a presumption of public concern such as that made by the district court.
 
 
 27
 Defendants also argue that plaintiffs have failed to allege sufficient facts to invoke plaintiffs' right of access to the courts. According to defendants, "[p]laintiffs' claim that they had 'successfully engaged in administrative and other litigation' with the Michigan Insurance Bureau belies the claim that Defendants were attempting to impede Plaintiffs' access to the court." Appellant Shah's Brief at 20. Defendants assert that the complaint failed to provide a basis for the retaliation claim because it did not specify the instances of court activities for which defendants were retaliating. Defendants' claim is deceiving. Plaintiffs argue that defendants sought to impose a conservatorship on plaintiff companies as a result of past litigation success against the state; the fact that plaintiffs had pursued litigation against defendants or their agency in the past does not suggest that defendants did not act to prevent further access to the courts or to retaliate against plaintiffs for such past access. Moreover, it is defendants' acts that form the basis for plaintiffs' claim, not the specifics of plaintiffs' prior proceedings in court. Reviewing this complaint under the Fed.R.Civ.P. 12(b)(6) standard, we must presume that plaintiffs can support their assertions of past litigation activity. Finally, we note that plaintiffs' complaint gives notice to defendants of the basis of their claims, and it should not be difficult for defendants to determine from state records the litigation to which plaintiffs refer.
 
 
 28
 Defendant Shah also attacks plaintiffs' complaint on the grounds that it failed to specify the role of each defendant in the alleged deprivation of rights. Defendant Shah argues that because plaintiffs' earlier complaints made allegations of his failures as a supervisor and no other allegations, and because the third amended complaint merely made conclusory assertions that defendants Shah and Hank acted jointly, with no specification of the roles played by either, the complaint against him has not stated a claim on which relief may be granted. We hold, however, that plaintiffs' allegations that defendants Shah and Hank acted "jointly and in concert," J.A. 278, are sufficient to overcome defendant Shah's objection. Plaintiffs have alleged the knowing cooperation of both defendants in acts intended as retaliation against plaintiffs for the exercise of their First Amendment rights, and the third amended complaint is not premised on supervisory disregard of an employee's actions.
 
 
 29
 Like the district court, we note the paucity of factual allegations in plaintiffs' third amended complaint, and we are not unmindful of the requirement that civil rights claims be pleaded with specificity. "A pleading will not be sufficient to state a cause of action under [Sec. 1983] if its allegations are but conclusions." Place v. Shepherd, 446 F.2d 1239, 1244 (6th Cir.1971); see also Gutierrez v. Lynch, 826 F.2d 1534 (6th Cir.1987); Chapman v. City of Detroit, 808 F.2d 459, 465 (6th Cir.1986) (quoting Blackburn v. Fisk Univ., 443 F.2d 121, 124 (6th Cir.1971)). However, in this case, the district court noted that "[e]ven though the complaint before the Court is the third amended complaint, it is disappointingly inarticulate. Still, the Court is obliged at this stage to accept well-pled factual allegations as true, and construe them in the light most favorable to plaintiffs.... At this stage, plaintiffs' allegations regarding the First Amendment claims are sufficiently specific to withstand the motions to dismiss." J.A. 112-13. We agree with the district court that, although the complaint is lacking in details, it constitutes sufficient pleading to survive defendants' Fed.R.Civ.P. 12(b)(6) motions.
 
 B.
 
 30
 Defendants argue that, in considering whether plaintiffs have stated a claim in their third amended complaint, this court should adopt a heightened pleading requirement in Sec. 1983 cases against government officials if the cases involve an element of intent or motive. We find, however, that defendants failed to raise this issue before the district court and that review by this court is therefore precluded. "As a general rule, this court will usually decline to entertain arguments not presented in the first instance to the trial court." Brown v. Crowe, 963 F.2d 895, 897 (6th Cir.1992). See, e.g., Walters v. First Tenn. Bank, N.A., 855 F.2d 267, 271 (6th Cir.1988), cert. denied, 489 U.S. 1067 (1989) (refusing to resolve on appeal a statute of limitations issue not raised at trial); Roth Steel Tube Co. v. C.I.R., 800 F.2d 625, 632 (6th Cir.1986), cert. denied, 481 U.S. 1014 (1987).
 
 C.
 
 31
 Defendants also argue that a state official's institution of legal proceedings cannot serve as the basis for liability under 42 U.S.C. Sec. 1983 in the absence of evidence that the official's action was egregious or a "sham" and that plaintiffs have, therefore, failed to set forth all of the necessary elements to state a claim relating to the institution of conservatorship proceedings. Defendants, however, cite no authority for this argument, as we do not find that any of the cases on which defendants rely require plaintiffs' initial pleading to include the allegation that defendants' actions were "egregious" or a "sham." Although in some cases it is necessary for the plaintiff to make a showing of proof as to these concepts, we find no cases that hold that it is a matter of pleading. Because this action is before us as an appeal from the district court's denial of defendants' Fed.R.Civ.P. 12(b)(6) motions, we are confined to a review of the complaint, and we must draw all reasonable inferences in favor of plaintiffs. Allard v. Weitzman (In re DeLorean Motor Co.), 991 F.2d 1236, 1240 (6th Cir.1993). With this in mind, we hold that plaintiffs' allegations that defendants' actions were taken with knowledge that plaintiff companies were financially sound is sufficient to justify an inference of egregious behavior by defendants.
 
 
 32
 In addition, the cases on which defendants rely are distinguishable from this case. In Whatley v. Philo, 817 F.2d 19 (5th Cir.1987), the plaintiff claimed that his due process rights were violated by defendants' initiation of "unfounded process" against him that was designed to harass him. The Whatley plaintiff's claim differed from these plaintiffs' claim because the Whatley plaintiff sought relief for the misuse of procedure itself. In this case, plaintiffs seek relief for the violation of First Amendment rights caused by the abuse of legal process in which defendants allegedly engaged. Thus, it is not the case to which the Fifth Circuit was referring when it said: " '[M]isuse of legal procedure, without more, does not rise to the level of a constitutional wrong remedied by Sec. 1983.' " Whatley, 817 F.2d at 22 (quoting Beker Phosphate Corp. v. Muirhead, 581 F.2d 1187, 1189 (5th Cir.1978) (per curiam)). In Norton v. Liddel, 620 F.2d 1375 (10th Cir.1980) the Tenth Circuit remarked that the Civil Rights Act was not intended to redress injuries caused by malicious claims, but this restriction applies only if the aggrieved parties have adequate state remedies available. Norton, 620 F.2d at 1378. Moreover, the Tenth Circuit noted that "if the misuse of the legal procedure is so egregious as to subject the aggrieved individual to a deprivation of Constitutional dimension[,]" relief may be available under Sec. 1983. Id. The court did not hold that the plaintiff was required to do more than set forth the factual allegations that indicated egregious behavior. Rather, the only holding was that a Sec. 1983 claim must involve behavior of a constitutional dimension. Norton, 620 F.2d at 1378. Defendants' reliance on the Seventh Circuit's adoption of the Noerr-Pennington doctrine for ordinary damages cases in Havoco of America, Ltd. v. Hollowbow, 702 F.2d 643 (7th Cir.1983), is misplaced. Havoco involved private parties, and there was no allegation that public officials sought to retaliate against state-regulated companies in violation of their constitutional rights. Havoco, 702 F.2d at 646. Accordingly, we conclude that this issue is meritless.
 
 D.
 
 33
 Finally, defendants argue that the district court erred in partially denying their Fed.R.Civ.P. 12(b)(6) motions to dismiss plaintiffs' third amended complaint on grounds of qualified immunity. Defendants assert that the allegations in plaintiffs' complaint are not sufficiently detailed to allow the district court to determine whether the law was clearly established at the time of the acts complained of and thus, whether defendants were entitled to qualified immunity. The district court found that plaintiffs had alleged sufficient facts to enable them to overcome defendants' qualified immunity defense, at least for purposes of a Fed.R.Civ.P. 12(b)(6) motion.
 
 
 34
 "A district court's denial of a claim of qualified immunity is immediately appealable." Cagle v. Gilley, 957 F.2d 1347, 1348 (6th Cir.1992) (quoting Mitchell v. Forsyth, 472 U.S. 511, 530 (1985)). Because qualified immunity is a question of law, we review a district court's denial of qualified immunity de novo. Walton v. City of Southfield, 995 F.2d 1331, 1335 (6th Cir.1993); Hall v. Shipley, 932 F.2d 1147, 1150 (6th Cir.1991).
 
 
 35
 Defendants Hank and Shah argue that they are free from liability on the basis of qualified immunity. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Walton, 995 F.2d at 1335. For a constitutional right to be clearly established, " 'the law must be clear in regard to the official's particular actions in the particular situation.' " Black v. Parke, 4 F.3d 442, 445 (6th Cir.1993) (quoting Long v. Norris, 929 F.2d 1111, 1114 (6th Cir.), cert. denied sub nom. Jones v. Long, 112 S.Ct. 187 (1991)). A clearly established right is one for which
 
 
 36
 [t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.
 
 
 37
 Anderson v. Creighton, 483 U.S. 635, 640 (1987) (citations omitted); Black, 4 F.3d at 445. Of course, a necessary concomitant to the determination of whether the constitutional right was clearly established is the determination of whether plaintiffs have asserted a violation of a constitutional right at all. Siegert v. Gilley, 500 U.S. 226, 231 (1991).
 
 
 38
 Having previously concluded that plaintiffs have asserted a Sec. 1983 claim in their complaint, we must next determine whether, at the time defendants allegedly began to take action against plaintiffs, they had a clearly established right to be free from retaliation by government officials for the exercise of their First Amendment rights. As a general rule, a finding of a clearly established right must be supported by precedent from the Supreme Court or this circuit, or in the alternative, by decisions of other circuits. Mumford v. Zieba, 4 F.3d 429, 432 (6th Cir.1993) (citing Ohio Civil Serv. Employees Ass'n v. Seiter, 858 F.2d 1171, 1177 (6th Cir.1988)).
 
 
 39
 As discussed earlier, a plaintiff has the burden of pleading facts that describe the violation of a clearly established right of which a reasonable public official, under an objective standard, would have known. Dominque, 831 F.2d at 676. In this case, plaintiffs allege in their amended complaint that defendants violated their First Amendment rights to free speech and access to the courts by taking action against them in retaliation for the exercise of these rights. In support of this claim, plaintiffs allege that defendants initiated a conservatorship action against the corporate plaintiffs when defendants knew these corporations were solvent and distributed draft audit reports and letters to other state insurance regulators that misrepresented that the conservatorship action was still underway. Therefore, we hold that plaintiffs have pleaded sufficient facts to meet their burden of describing a constitutional violation; namely the claim of retaliation for exercise of their First Amendment rights. We must now address whether, under these facts, the law was clearly established that such retaliatory action was prohibited.
 
 
 40
 At the time of defendants' allegedly retaliatory conduct, the law was clearly established that retaliation for the exercise of free speech was a constitutional violation and could serve as the basis for an action under 42 U.S.C. Sec. 1983. Walje v. City of Winchester, Ky., 773 F.2d 729, 732 (6th Cir.1985). There is no doubt that plaintiffs had an interest, protected under the First Amendment, in criticizing the conduct of public officials regarding matters of public concern at the time defendants took action against plaintiffs. New York Times Co. v. Sullivan, 376 U.S. 254, 269-70 (1964). Furthermore, in this court, "The law is well settled ... that retaliation under color of law for the exercise of First Amendment rights is unconstitutional...." Zilich v. Longo, 34 F.3d 359, 365 (6th Cir.1994) (holding that threats of physical violence in retaliation for plaintiff's criticism of mayor violated plaintiff's right to free speech). In Walje, we held that a city firefighter was entitled to general damages in a 42 U.S.C. Sec. 1983 action where defendant city officials violated plaintiff's right to free speech by suspending him in retaliation for his public statements expressing firefighters' grievances over pay and working conditions. Walje, 773 F.2d at 730, 732. Similarly, in Pickering v. Board of Educ., 391 U.S. 563, 574 (1968), the United States Supreme Court held that the school board violated a public school teacher's First Amendment right to free speech by dismissing him in retaliation for his public criticism of the manner in which the school board raised revenue and allotted funds to schools.
 
 
 41
 Plaintiffs also had a clearly established right to be free from retaliation for exercising their right of access to the courts. In Graham v. National Collegiate Athletic Ass'n, 804 F.2d 953, 959 (6th Cir.1986), we held that "[i]t is beyond dispute that the right of access to the courts is a fundamental right protected by the Constitution.... Accordingly, interference with or deprivation of the right of access to the courts is actionable under Sec. 1983." In Graham, we did not reach the issue of whether the First Amendment right of access to the courts includes a right to be free from retaliation for the exercise of this right, but we noted that several other circuits have held that " 'state officials may not take retaliatory action against an individual designed ... to punish him for having exercised his constitutional right to seek judicial relief....' " Id. (quoting Harrison v. Springdale Water & Sewer Comm'n, 780 F.2d 1422, 1428 (8th Cir.1986)). See also Franco v. Kelly, 854 F.2d 584, 589 (2d Cir.1988) (Intentional obstruction of the right to seek redress " 'is precisely the sort of oppression that ... section 1983 [is] intended to remedy.' " (quoting Morello v. James, 810 F.2d 344, 347 (2d Cir.1987)); Hall v. Sutton, 755 F.2d 786, 787 (11th Cir.1985); Lamar v. Steele, 693 F.2d 559, 562 (5th Cir.1982), cert. denied sub nom. Steele v. Lamar, 464 U.S. 821 (1983); Milhouse v. Carlson, 652 F.2d 371, 374 (3d Cir.1981); Silver v. Cormier, 529 F.2d 161, 163 (10th Cir.1976). Thus, at the time of defendants allegedly retaliatory conduct, plaintiffs had a clearly established right to be free from such retaliation for the exercise of their First Amendment right to access to the courts.
 
 
 42
 Finally, we must determine whether, given the status of the law at the time defendants took the actions at issue, reasonable persons in defendants' positions would have realized that their conduct violated plaintiffs' First Amendment rights. Walton, 995 F.2d at 1335-36; Long, 929 F.2d at 1115. In Anderson, the Court noted that although we must determine whether it is reasonable to expect defendants to have known that their actions violated another person's rights, it is not the case that an official is protected by qualified immunity unless the very action in question has previously been held unlawful. We examine only whether "in the light of pre-existing law the unlawfulness [was] apparent." Anderson, 483 U.S. at 640. However, for the unlawfulness to be apparent, "[t]he particular conduct of the official must fall clearly within the area protected by the constitutional right...." Walton, 995 F.2d at 1336 (citing Long, 929 F.2d at 1114-15).
 
 
 43
 The courts have long been fierce protectors of the rights guaranteed by the First Amendment. In New York Times Co. v. Sullivan, 376 U.S. at 270, the Court discussed the "profound national commitment" to free speech and found that "debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." It is just this type of criticism that plaintiffs allege caused defendants to take actions against them, with the intention of chilling their exercise of these valued First Amendment rights. Given the state of the law in 1988 and 1989, when defendants began their allegedly retaliatory acts, we find that reasonable persons in defendants' positions would have known that actions taken with an intent to retaliate against plaintiffs for the exercise of their First Amendment rights could give rise to liability. Our case law was clear that an individual may not be punished for seeking access to the courts or for publicly criticizing the government. Thus, we conclude that defendants are not entitled to qualified immunity on this issue.
 
 III.
 
 44
 For the reasons stated, the district court's judgment is AFFIRMED.
 
 
 45
 NATHANIEL R. JONES, Circuit Judge, dissenting.
 
 
 46
 The judicially created doctrine of qualified immunity strikes a balance between the need to vindicate those whose constitutional guarantees are infringed by public officials and the need to minimize the disruption of government caused by subjecting officials to risk of trial. See Anderson v. Creighton, 483 U.S. 635, 638 (1987); Harlow v. Fitzgerald, 457 U.S. 800, 813-15 (1982). It provides that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818. A claim against a public official avoids this immunity only if the right alleged to have been violated was "clearly established" in a particularized sense at the time of the complained of conduct. Anderson, 483 U.S. at 640. That is, the contours of the right must be sufficiently clear that a reasonable official would have understood that what he was doing violated that right. Id.
 
 
 47
 The history of official wrongdoing should alert us all to the risks of allowing the judicially-created doctrine of qualified immunity to become a Maginot Line that protects the infringement upon constitutional guarantees by public officials. Thus, the courts require that there be a weighing, case-by-case, of claims of qualified immunity. The need to strike a balance between constitutionally guaranteed freedom of expression, and maintaining good public order, is therefore a sensitive but necessary exercise. Brandenburg v. Ohio, 395 U.S. 444 (1969); NAACP v. Claiborne Hardware Co., 458 U.S. 886 (1982); New York Times Co. v. Sullivan, 376 U.S. 254 (1964).
 
 
 48
 In this case, the parties do not dispute that the State of Michigan or its officers may not retaliate against the Plaintiffs' exercise of their First Amendment right to freedom of speech, see Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir.1989), or their First Amendment right of access to the courts, see Graham v. NCAA, 804 F.2d 953, 958-59 (6th Cir.1986), which if sufficiently pled may avoid the Defendants' qualified immunity. The main contention on appeal is whether the Plaintiffs have provided sufficient factual allegations to avoid the Defendants' qualified immunity.
 
 
 49
 I have carefully considered the Plaintiffs' complaint for its factual sufficiency and conclude that it is flawed by it conclusory nature.