NYGAARD, Circuit Judge,
dissenting.
I believe that the majority incorrectly states the elements of our state-created danger exception in such a way that leads them to incorrectly identify the dispositive inquiry that drives our state-created danger test. This mis-focus, in turn, has caused them to make analytical missteps in assessing the adequacy of the claim presented in this case. It is axiomatic that the pleadings in this case must be taken in their entirety in ruling upon a motion under Rule 12(b)(6). In my view, when assessed cumulatively, they establish not only the existence of affirmative acts, but more importantly, that the state used its authority to place the plaintiff in a position of enhanced danger, thereby meeting the fourth element of the state-created danger test. Hence, I respectfully dissent.
I. The Fourth Element of the State-Created Danger Test
The majority submits that the test developed in our Circuit to assess the adequacy of a state-created danger claim contains the word “affirmatively.” Specifically, they state the fourth element of the test as whether:
(4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.
Maj. Op. at 280 (emphasis added). This, quite plainly, is an incorrect statement of our test. Since Kneipp v. Tedder, 95 F.3d 1199 (3d Cir.1996) enunciated our state-created danger test, not one of our cases has inserted the word “affirmatively” into the fourth element of the test.[9] See Mark v. Borough of Hatboro, 51 F.3d 1137, 1152 (3d Cir.1995) (“Cases like these have four things in common: ... (4) the state actors used their authority to create an opportunity that otherwise would not have existed for the third party’s crime to occur.”); Kneipp, 95 F.3d at 1205 (applying the Mark 4-part test); Morse v. Lower Mor-ion Sch. Dist., 132 F.3d 902, 908 (3d Cir. 1997) (quoting and applying the Mark 4-part test); Smith v. Marasco, 318 F.3d 497, 506 (3d Cir.2003) (noting the fourth element of the Kneipp test as, “^[whether] the state actors used their authority to create an opportunity that otherwise would not have existed for the third party’s crime to occur.”); Schieber v. City of Philadelphia, 320 F.3d 409, 417 (3d Cir.2003) (quoting the Kneipp test); Rivas v. City of Passaic, 365 F.3d 181, 197 (3d Cir.2004) (“The last element of the Kneipp test asks whether the state actor used his or her authority to create an opportunity, which otherwise would not have existed, for the specific harm to occur.”). The majority does not cite, nor can I find, any case or other form of support for its claim, today, that the test that our Circuit has developed includes the word “affirmatively” in the fourth element.
*289 II. The Central Inquiry and Analysis Under the Fourth Element
By its insertion, the majority signals its belief that the hallmark inquiry under the fourth element is whether the state’s actions can be characterized as affirmative or not.[10] As I address below, this assertion stands quite starkly in contrast to the dis-positive inquiry for addressing the state-created danger exception established by our Court.[11]
Our recent cases have shifted away from inquiring into the existence of affirmative acts as a standard to establish the fourth element of our test for a compelling reason: to so hinge our inquiry would center us squarely within the troublesome deci-sional thicket governing the distinction between action and inaction.[12] Writing for the Court in Morse, Chief Judge Scirica addressed the significance of this dilemma:
one of the common factors in cases addressing the state-created danger is that the state actors “used their authority to create an opportunity that otherwise would not have existed for the third party’s crime to occur.” The dispositive factor appears to be whether the state has in some way placed the plaintiff in a dangerous position that was foreseeable, and not whether the act was more appropriately characterized as an affirmative act or omission.
Morse, 132 F.3d at 915 (emphasis added) (citations omitted). In Morse, we rejected the affirmative act/omission inquiry because of the difficulty it posed in reaching sound conclusions. Id. at 914 (noting that “[c]onduct that has been held to be an affirmative act under one set of facts has not met that standard in a similar setting.”). And we criticized the District Court for reading the fourth element “to contemplate that a state actor must affirmatively act to create the risk which results in harm to the plaintiff.” Id. at 914. We also explicitly recognized that the *290 question of whether an affirmative act is required had already been answered. Id. at 915 (“[w]hether an affirmative act rather than an act of omission is required ... ha[s] been answered by Mark”). Consequently, as Morse represents a controlling case, I cannot join in the majority’s assertion to the contrary, that the hallmark of our test is whether the acts can be characterized as affirmative.
Morse is not the only controlling case the majority elides. Rivas reflects our most recent chance to address the state-created danger exception’ and further cements Morse’s rejection of the affirmative act/omission inquiry. There, Emergency Medical Technicians (“EMTs”) called for police backup after encountering a severely psychotic and convulsing middle-aged man. Upon the police officers’ arrival, the EMTs informed them that the man, Mr. Rivas, had assaulted one of the EMTs. They failed to advise the police, however, that Mr. Rivas had a medical condition that explained his actions, and the EMTs then abandoned control over the situation. After an altercation with the police, Mr. Rivas was placed on stretcher and at some point stopped breathing and died. We found that the EMTs’ conduct, taken cumulatively, satisfied the fourth element of the state-created danger test. Specifically, we concluded that the conduct “created an opportunity for harm that would not have otherwise existed” and that “were it not for those acts, Mr. Rivas presumably could have remained in the apartment’s bathroom for the duration of his seizure without incident.” Rivas, 365 F.3d at 197.
Looking closely at the relevant conduct in Rivas, it is clear that our approach under the fourth element of the state-created danger exception now rests some distance away from the affirmative act/omission inquiry. In Rivas, the conduct we found to have met the fourth element of the test involved an initial act by the EMTs — calling and informing the officers of Mr. Rivas’ assault on one of the EMTs — and then two omissions — not advising the officers of Mr. Rivas’ medical condition and abandoning control over the situation. We found this conduct to have met the fourth element of the test despite, or rather in spite of, any act/omission characterization that might have been made. Thus, Rivas stands both for our Court’s shift away from the affirmative act/omission inquiry and also for the proposition that the conduct must be looked at in its entirety to determine whether the state placed the plaintiff in a position of enhanced danger.
Today’s ease presents a set of pleadings which, if proven, would establish nearly identical conduct as that analyzed in Rivas. Bright claims that the initial confrontation between Koschalk and his parole officer, while Koschalk was violating his parole, and then the failure by that parole officer to take appropriate action on this violation emboldened Koschalk to believe he could act with impunity in carrying out his increasingly delusional and violent threats and plans. The conduct alleged here, when taken together, contains both an initial act — the confrontation between the parole officer and Koschalk' — and then an omission — the parole officer’s abdication of his responsibility to take action on a clear parole violation.
We cannot simply annul Rivas’ prescription that it is the totality of the conduct that must be analyzed under the fourth element of the state-created danger exception. The majority dismisses Bright’s claim on the basis that “Bright has identified no action of the defendants that utilized their state authority in a manner that rendered Annette more vulnerable to Kos-chalk than she otherwise would have been” and that “it is the ensuing ten week delay *291 about which Bright complains.” Maj. Op. at 283 (emphasis added). I am at a loss to understand how, based on the pleadings here, the majority could claim that there is “no action of the defendants that utilized their state authority in a manner that rendered Annette more vulnerable” to harm. Bright has repeatedly and specifically claimed that the confrontation itself was the trigger for increasing Koschalk’s disposition to violence.[13] Had there been no confrontation but rather merely a delay of enforcement, Bright could not successfully claim that Koschalk was emboldened to act more violently.[14] Instead, the confrontation itself plays an integral role in creating an opportunity for harm that would otherwise not have existed, placing this case outside the purview of DeShaney and firmly within the ambit of our state-created danger exception.
To highlight my problem with the majority’s logic, if we applied it to the facts in Rivas it would read something like this: “the fault Rivas finds is solely with the EMTs’ failure to disclose certain information and the abdication of responsibility. Because there is nothing affirmative in these acts, the claim cannot be sustained.” The majority’s approach, emphasizing as it does the necessity of characterizing acts as affirmative, only underscores its inadequacies. By cabining Bright’s claim as based solely on an ensuing delay in taking action, the majority lops off the initial affirmative act so it can conclude that there was no affirmative act. I fail to understand how this analysis at all resembles the meaning of our fourth element inquiry.
Without belaboring the point more, the basis of Bright’s claim is that the affirmative confrontational act, like the initial act of the EMTs in Rivas, taken together with the ensuing conduct, created an opportunity for harm that otherwise would not have existed, thus surpassing the threshold necessary to meet the fourth element of the state-created danger test. Regardless of whether Bright can ultimately prove this, if our test is to have any content, he is at least entitled to try.
III. Emboldenment Claims under the State-Created Danger Exception
This appeal poses the question of whether our state-created danger exception supports a theory of emboldenment. Our Court has never addressed, head on, this specific question.
*292 As the above analysis makes clear, Bright’s claim, for the purposes of the fourth element of the state-created danger claim, is analogous to Rivas. Because we held that the claim in Rivas met the fourth element of the state-created danger test, so too, we must hold here. Implicit in my conclusion, then, is the belief that our state-created danger exception allows for a claim premised on an emboldenment theory. To hold otherwise would render the render the state-created danger exception logically and analytically inconsistent.
The majority rejects Bright’s emboldenment claim by responding that, despite the pleadings to the contrary, Bright is unable to bring his claim within the state-created danger exception. This simple assertion, without more, is insufficient.
Importantly, the difference between Rivas and this case is not in the nature of the relevant conduct — in each case the plaintiff has pleaded a combination of affirmative acts and omissions — or in the general effect that the conduct has had on the situation — -in each case the claimed effect was that the plaintiff was placed in a situation of enhanced danger. Instead, the only difference is in the theory of how the claimed conduct placed the plaintiff in a position of enhanced danger. In Rivas, the alleged behavior put the plaintiff in a position of enhanced danger because the EMTs called the police and only disclosed certain information about the nature of the situation — information which affected the way the officers handled the situation— and then abandoned control over the event. We might say that this claim is premised on a theory of misrepresentation; that is, the EMTs’ misrepresentation to the officers enhanced the danger to the plaintiff because it created a situation where the officers would act more violently. Here, Bright’s claim is premised on a theory of emboldenment: the increased danger arose from Koschalk’s confrontation with his parole officer and ensuing lack of effective enforcement because it emboldened Koschalk to act more violently-
I can see no logical or analytical reason to allow Rivas’ claim and not Bright’s. For the purposes of the fourth element, there is simply no functional difference between the two claims, precisely because the result is the same. In both, the state has acted to place the plaintiff in a position of increased danger. True, the claims posit different theories as to why the plaintiff was placed in a position of enhanced danger, but nevertheless, both establish the claim that, but for the state’s conduct, the plaintiff would not have been placed in that position at all. Because our inquiry under the fourth element asks exactly this, both claims meet the test.
IV.
When viewed in light of our jurisprudence and our current position on the proper inquiry for the state-created danger exception, the majority’s initial insertion takes on a significantly different character and changes materially our inquiry. By inserting the word “affirmatively,” the majority reworks not only the actual language of our test, but also our central inquiry in light of Morse and Rivas.
Moreover, until today our case law has evidenced an unambiguous shift away from reliance on the frustratingly murky distinction between affirmative action and omission. I fear that with a single insertion, the majority succeeds in pulling us right back in. We have consciously and, I believe, prudently moved away from this distinction precisely because of the difficult and often fruitless analysis required therefrom. Thus it is true, as the majority asserts, that “[i]t is the misuse of state authority, rather than a failure to use it, *293 that can violate the Due Process Clause.”Maj. Op. at 281. But this statement proves too much. It exposes the principle, established in Morse and Rivas, that the central inquiry of our state-created danger test is whether the state placed the plaintiff in a position of enhanced danger. We cannot ignore this principle because we believe the inquiry should be something else. It is true that the Court in DeSha-ney sought impartiality in the face of “natural sympathy.” DeShaney, 489 U.S. at 212, 109 S.Ct. 998. Importantly for the plaintiffs in this case, however, we should not plunder whatever merit that exhortation may have had. Tragedy should not incite illegitimate influence; yet neither should it be dismissed before it has had a chance to plead its case.
Upon the foregoing, I respectfully dissent.

. Our initial attempt to establish a test for the state-created danger exception to Deshaney v. Winnebago Cty. Servs. Dept., 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) can be traced to Mark v. Borough of Hatboro, 51 F.3d 1137, 1152 (3d Cir.1995) even though it has, since Kneipp, been known as the Kneipp test. Recently, Judge Ambro accurately charted modifications to our test, leading him to question the appropriateness of continuing to refer to the DeShaney exception as the Kneipp test. See Rivas v. City of Passaic, 365 F.3d 181, 202-03 (3d Cir.2004).

. The majority states, "[i]t is important to stress, for present purposes, that under the fourth element of a state-created danger claim, '[l]iability under the state-created danger theory is predicated upon the states' affirmative acts which work to the plaintiffs' detriments in terms of exposure to danger.’ ” Maj. Op. at 281 (citations omitted).

. I am not suggesting that the presence of an affirmative act does not play a part in our state-created danger inquiry. To satisfy the fourth element, there still must be something more than simple inaction by the state even “when suspicious circumstances dictate[] a more active role.” DeShaney, 489 U.S. at 203, 109 S.Ct. 998. However, this inquiry is limited in its effectiveness. As I discuss below, to hold that the mere presence of omis-sive acts abrogates any ability to satisfy the fourth element, especially when combined with other affirmative conduct, misconceives the nature of our test and the language from which the state-created danger exception derives: "[wjhile the state may have been aware of the dangers that Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them.” Id. at 201, 109 S.Ct. 998.

.When the Mark Court formulated, for the first time, our Circuit's test for the state-created danger exception, it did so in full recognition of the United States Court of Appeals for the Seventh Circuit's articulation in Bowers v. DeVito, 686 F.2d 616 (7th Cir. 1982):
We do not want to pretend that the line between action and inaction, between inflicting and failing to prevent the infliction of harm, is clearer than it is. If the state puts a man in a position of danger from private persons and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active tortfeasor as if it had thrown him into the snake pit.
Bowers, 686 F.2d at 618. These words ring true today. As I explain later, the claim at issue in this case is exactly that the state put a person in a position of danger and then failed to protect them. To characterize this as a merely passive act is overtly wrong.

. As this appeal comes to us on a Rule 12(b)(6) motion, I cannot accept the majority’s conclusory dismissal of the plaintiff's allegations. Bright must only satisfy the liberal notice pleading requirements under Rule 8(a). See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512-13, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Accordingly, we are bound not to dismiss the complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief.” Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Additionally, we are bound to construe all reasonable inferences in favor of the plaintiff. See id. Thus, for the purposes of this case, we should not dismiss Bright’s claims if the sum of all alleged facts would show that the state used its authority in a way that created a danger to the plaintiff or that rendered the plaintiff more vulnerable to danger than had the state not acted at all.

. Indeed, had Bright's claim alleged merely that the parole officer's failure to arrest Kos-chalk created an opportunity for harm that would not have otherwise existed, this would have been an easy case. Such a claim would clearly fail under the state-created danger doctrine, precisely because there would have been nothing to support the requirement that the state have placed the plaintiff in a position of enhanced danger. Such a pleading would be governed by Deshaney’s rule requiring something more than mere idleness, even where circumstances dictate a more active role, in order for a claim to be stated. See DeShaney, 489 U.S. at 203, 109 S.Ct. 998.