**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4184
_____

LECHELLE BROWN;
BEATRICE TERRY, as guardian ad litem of LECHELLE BROWN
and as administratrix of the ESTATE OF ROCHELLE TERRY,
Appellants

v.

SCHOOL DISTRICT OF PHILADELPHIA;
DR. PAUL G. VALLAS; DR. RICHARD MANTELL;
AKEEM WATSON; ANGELA PRESSLY;
TODD WADDY, JR.; TODD WADDY, SR.;
KYSHAN TUNSTALL; NICOLE WALKER;
AZEEZAH CHARLES, in her own capacity and parent/guardian of
QUINZELL POWELL, a minor;
LISA FLETCHER in her own capacity and parent/guardian of
JEFFREY CHASE, a minor
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civil No. 08-cv-02787)
District Judge:  Honorable Norma L. Shapiro
_____

Submitted Under Third Circuit LAR 34.1(a)
September 16, 2011
_____

Before: RENDELL, JORDAN and BARRY, *Circuit Judges*

(Opinion Filed: September 20, 2011)

_____

OPINION
_____

BARRY, *Circuit Judge*

On June 15, 2006, when Lechelle Brown ("Brown") was a sophomore in high school, she was sexually assaulted by five fellow students during the lunch hour at her school in Philadelphia. At issue on appeal are her claims under the Fourteenth Amendment and 42 U.S.C. § 1983 against the School District of Philadelphia and Dr. Richard Mantell, the high school principal at the time of the assault (collectively "School District").[1] She argues that the School District is liable for violations of her right to bodily integrity under the state-created danger doctrine. The District Court granted summary judgment in favor of the School District on this claim, finding that it took no affirmative action to place Brown in danger or make her more vulnerable to the assault than she otherwise would have been. We will affirm.

## I.    FACTUAL BACKGROUND

Brown has mild mental retardation, as well as a disorder that inhibits her ability to speak or comprehend the written or spoken word. The combination of these disabilities makes it difficult, among other things, for her to ask for help or advocate for herself. She

_____

[1] Brown made other claims, but all of them except the § 1983 claim against the School District have been settled or dismissed, and they thus are not before us. The plaintiffs are Lechelle Brown and her grandmother, Beatrice Terry, as guardian *ad litem* of Brown and as the administratrix of the estate of Rochelle Terry, Brown's mother. As to

2

received special education services at school through an Individualized Education Program. Those who know Brown well say that outside her family, she rarely speaks more than a few words at a time and that she responds primarily to yes-or-no questions. She was close to her mother, who died during this litigation and who was her devoted advocate.

On the day of the assault, Brown was eating lunch by herself in the school cafeteria. One of the assailants asked her to come with him, and she followed him to an auditorium on the second floor of the school. The auditorium should have been locked, but, as school administrators knew, it was relatively easy for students to force the door open, and students were regularly found there, against school rules. Brown complied with the five assailants' demands for oral sex, and some of them groped her. All five of them pled guilty to sex offense charges in juvenile court, and that court determined that due to her disabilities, Brown was not legally capable of consenting to sex.

There is some evidence in the record – much, if not all, of which the District Court ruled was inadmissible – that two weeks before the assault, another student, who was not one of the five assailants on June 15, 2006, told Brown to meet him in the library for oral sex. When she did not do so, he hit her on the head or messed up her hair. One of Brown's teachers knew that the student had at least messed up her hair, and though the teacher had heard that the interaction had something to do with sex, she did not know the

_____

the issues that are before us, Terry does not have any claims that are separate from Brown's, and we will therefore refer to the plaintiffs as "Brown."

details.

Under the most generous reading of all of the evidence Brown submitted,[2] she and her mother met with that teacher and an assistant principal after this incident, and one or both of them promised that the school would provide Brown with one-on-one adult supervision. Brown contends that if the School District had done what it allegedly promised to do, the assault in the auditorium would not have happened.[3] She also claims that the School District is liable because it failed to fix the lock on the door to the auditorium and because it generally refused to expel or appropriately discipline violent students, including some of her assailants. Some officials, including a committee of the Pennsylvania House of Representatives, have concluded that the School District systematically has underreported violence in its schools.

## II. ANALYSIS

At issue before us are Brown's claims pursuant to § 1983 for violations of her right to bodily integrity under the Due Process Clause of the Fourteenth Amendment. For liability to attach to Mantell, he "'must have [had] personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior.

---

[2] Because we would affirm considering all of the evidence Brown submitted, including the evidence the District Court ruled was inadmissible, we will not address the question of whether the Court abused its discretion in its evidentiary rulings nor will we consider the legal conclusions and speculative opinions of plaintiffs' school safety expert.

[3] Brown claims that the School District "deliberately misrepresented that Lechelle would be protected" (Appellants' Br. at 62), but there is no evidence in the record that any promise of protection, assuming that admissible evidence would show such a

4

Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.'" *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). For the School District itself to be liable, "any injury must be inflicted by execution of [its] policy or custom." *Santiago v. Warminster Twp.*, 629 F.3d 121, 135 (3d Cir. 2010) (internal quotation marks omitted).[4]

"[T]he Due Process Clause does not impose an affirmative duty upon the state to protect citizens from the acts of private individuals," but the state-created danger doctrine provides an exception to this general rule.[5] *Sanford v. Stiles*, 456 F.3d 298, 303-04 (3d Cir. 2006) (citing *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 198-200 (1989)). We have held that a plaintiff asserting a claim under the state-created danger doctrine must prove four elements:

(1) the harm ultimately caused was foreseeable and fairly direct;

---

promise, was a deliberate misrepresentation. There is also no evidence that Mantell knew about this alleged promise.

[4] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331, and we have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of summary judgment.

[5] There is also an exception for a person with whom the state has a custodial relationship, but a student in school does not have that relationship with the state. *D.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, 1371 (3d Cir. 1992) ("[I]t is the parents who decide whether [mandated] education will take place in the home, [or] in public or private schools . . . . For some, the options may be limited for financial reasons. However, even when enrolled in public school parents retain the discretion to remove the child from classes as they see fit, subject only to truancy penalties for continued periods of unexcused absence. In the case of special education students, the parents have even greater involvement since they must approve the precise educational program developed for their child." (citations omitted)).

> (2) a state actor acted with a degree of culpability that shocks the conscience;
>
> (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
>
> (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Id.* at 304-05.

The District Court held that Brown could not establish the fourth element because there was no state actor who affirmatively acted to create the danger which led to her assault, or to make her more vulnerable to it.[6] Brown contends that school officials affirmatively promised to provide her with one-on-one adult supervision and that she and her family relied on that promise in continuing to send her to school, but the crux of that argument is that the school promised *and then failed* to provide her with the supervision. We agree with the District Court that this is not an affirmative act. The same is true regarding the School District's failure to expel or appropriately punish violent students.

We addressed an analogous fact pattern in another tragic case. In *Bright v. Westmoreland County*, we held that the plaintiff could not assert a § 1983 claim under the state-created danger doctrine. 443 F.3d 276, 283-84 (3d Cir. 2006). In that case, a man

---

[6] The Court concluded that Mantell was entitled to qualified immunity because Brown could not show that he violated her constitutional rights, given the lack of any affirmative action. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

6

who had pled guilty to corrupting the morals of a twelve-year-old girl was on probation. In violation of his conditions of probation, he continued to have contact with the girl, and a probation officer saw him with her, unsupervised, at a store. The father of the victim, who was the plaintiff in the case, called the police to ask them to arrest the man, and a police officer "assured [the father] that immediate action would be taken," but he was not arrested. *Id.* at 279. He then killed the victim's eight-year-old sister "to retaliate against the family for its efforts to prevent him from seeing the 12-year-old victim." *Id.*

We held in *Bright* that the state actors had taken no affirmative action, and we affirmed the dismissal of the § 1983 claim. With respect to the police officer's promise to arrest the perpetrator, Bright could not "claim that the state in any way restricted his freedom to act on his family's own behalf." *Id.* at 284. In Brown's case, even though she was required to attend school, her family could have fulfilled that requirement in a different setting. *See D.R.*, 972 F.2d at 1371. In *DeShaney*, moreover, the Supreme Court held that even where the state has made "expressions of intent to help," it has no "affirmative duty to protect." 489 U.S. at 200, *quoted in Bright*, 443 F.3d at 280-81, 284. In this case, even if Brown could prove with admissible evidence that a school official promised to provide her with one-on-one supervision, the failure to follow through on that promise did not create an affirmative duty to protect her from the student assailants.

Brown primarily relies on two cases to support her arguments. In one, *Kneipp v. Tedder*, we held that the plaintiffs had stated a claim under the Fourteenth Amendment

and § 1983 against the City of Philadelphia and its police officers. 95 F.3d 1199, 1201 (3d Cir. 1996). On a cold night, the police officers came upon plaintiff Samantha Kneipp ("Kneipp"), who was severely intoxicated and walking home with her husband. The police stopped the couple for causing a disturbance on the highway, allowed the husband to go home to relieve a babysitter, and then later sent Kneipp home alone. She was found unconscious in the bottom of an embankment and suffered hypothermia and severe brain damage. *Id.* at 1201-03. In that case, the plaintiffs argued that the officers "voluntarily assume[ed] responsibility for her protection when they told [the husband] he could leave." *Id.* at 1203.

With respect to the fourth prong of the state-created danger doctrine, we held in *Kneipp* that there was sufficient evidence that the officers "used their authority as police officers to create a dangerous situation or to make Samantha more vulnerable to danger had they not intervened" by sending the husband home and "in detaining Samantha, and then sending her home unescorted in a seriously intoxicated state in cold weather." *Id.* at 1209. We characterized the officers' actions as "affirmative acts" and an "intervention," *id.* It is not, or course, always easy to distinguish between an affirmative act and a failure to act. As the Seventh Circuit wrote,

> If the state puts a man in a position of danger from private persons and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active tortfeasor as if it had thrown him into a snake pit.

*Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir. 1982), *quoted in D.R.*, 972 F.2d at 1374.

8

The police officers in *Kneipp* intervened in the couple's walk home and detained Kneipp before releasing her into the night. Those actions – intervening, detaining, and then releasing – were akin to throwing her into a "snake pit." The police officers did not put her in danger of harm from another person but rather from her own inebriation, combined with the dangerous weather that night.

The School District's treatment of Brown is distinguishable from the conduct in *Kneipp*. The School District did not, for example, keep anyone else from helping Brown, as the police officers did by detaining Kneipp and sending her husband home, and it did not send her straight to the clutches of her assailants, as the officers did when they sent Kneipp into the cold night air. The School District did not "act" at all. This *lack* of action perhaps contributed in some way to tragic consequences for Brown and her family, but the School District's lack of affirmative action is, nonetheless, fatal to Brown's § 1983 claim.

Brown relies on another case that involved sexual abuse in school, *Stoneking v. Bradford Area School District*, 882 F.2d 720 (3d Cir. 1989). In *Stoneking*, a former high school student sued her school district and its officials under § 1983 and the Fourteenth Amendment for failing to protect her from a teacher who school officials knew had sexually harassed and assaulted other students. School officials in that case kept a secret file of the teacher's actions, did not discipline the teacher, and intimidated previous victims from telling their stories. We held that the § 1983 claim could survive summary

9

judgment against some of the defendants, over their assertions of qualified immunity, because "state officials may [not] escape liability arising from their policies maintained in deliberate indifference to actions taken by their subordinates," *id.* at 725, and "public officials in administrative positions with notice of assaultive behavior by their subordinates must not take actions which communicate that they encourage or even condone such behavior," *id.* at 729. Critical to our decision in *Stoneking*, the plaintiff's assailant was a state actor and a subordinate of the defendants. *See id.* at 725; *see also D.R.*, 972 F.2d at 1376 ("[A] violation by state actors" was the "linchpin" of the claims in *Stoneking*). The School District here did not have the same relationship with Brown's assailants as the defendants had with the teacher in *Stoneking*. *Stoneking*, therefore, has little to teach us regarding the claims at issue here.

Brown's assault on June 15, 2006 was a tragedy, and its consequences have been serious and devastating for her and her family. We nonetheless agree with the District Court that the School District is not liable under § 1983 and the Fourteenth Amendment for the harm she has suffered.

## III. CONCLUSION

We will affirm the judgment of the District Court.